METPATH, INC., PLAINTIFF-APPELLANT, v. DIRECTOR, DIVISION OF TAXATION, DEFENDANT-RESPONDENT.

Argued February 6, 1984—Decided May 23, 1984.

*Adrian M. Foley, Jr.*, argued the cause for appellant (*Connell, Foley & Geiser*, attorneys).

*Harley A. Williams*, Deputy Attorney General, argued the cause for respondent (*Irwin I. Kimmelman*, Attorney General of New Jersey, attorney; *James J. Ciancia*, Assistant Attorney General, of counsel).

The opinion of the Court was delivered by

SCHREIBER, J.

Plaintiff, Metpath, Inc., commenced this action in the Tax Court against the Director, Division of Taxation, contesting deficiency assessments of $279,188 plus interest of $176,314 imposed under section 54:32B–3 of the Sales and Use Tax Act, *N.J.S.A.* 54:32B–1 to –29, for chemicals purchased by the plaintiff between April 1, 1970 and September 30, 1979. The Director moved for summary judgment and the plaintiff, claiming an exemption under *N.J.S.A.* 54:32B–8.20, filed a cross-motion for summary judgment. The Tax Court granted only the Director's motion. 4 *N.J.Tax* 277 (1982). The Appellate Division affirmed substantially for the reasons expressed by Judge Lasser in his opinion for the Tax Court. 5 *N.J.Tax* 477 (App.

Div.1983). We granted plaintiff's petition for certification, 94 *N.J.* 604 (1983), and affirm.

Plaintiff operates a laboratory in which it performs more than 800 laboratory testing service procedures on blood and other body fluids and substances primarily for hospitals, physicians and government agencies. The laboratory tests frequently involve processing operations requiring the use of certain chemicals. When testing has been completed, plaintiff submits a computer-generated laboratory report of the test results to its customers. The chemicals used in these procedures do not become a component part of the report. The issue is whether plaintiff's purchase of these chemicals is exempt from the Sales and Use Tax.

Plaintiff claims it is exempt by virtue of *N.J.S.A.* 54:32B–8.20 (previously designated –8(t), *L.*1966, *c.*53) (the catalyst exemption), which reads as follows:

> Receipts from sales of materials, such as chemicals and catalysts, used to induce or cause a refining or chemical process, where such materials are an integral or essential part of the processing operation, but do not become a component part of the finished product are exempt from the tax imposed under the Sales and Use Tax Act.

The plaintiff contends that it has met all the essential elements of the catalyst exemption provision: (1) a sale of materials such as chemicals; (2) use of chemicals to induce or cause chemical processes; (3) use of chemicals that are an "integral or essential part of the processing operation"; and (4) use of chemicals that are not a component part of the finished product. The defendant agrees that the first three prerequisites have been satisfied. The parties' dispute concerns only the fourth requirement.

Insofar as the fourth element is concerned, plaintiff argues first that there is no finished product and that none is required under the statute. Alternatively, it contends that if the catalyst exemption is read to require a resultant product, the reports submitted to the customers satisfy that element. The Director, on the other hand, claims that the statute requires

that there be a finished product (tangible personal property) and that the written report furnished to the customer does not satisfy this requirement because the chemicals were not physically used to produce the report.

The Sales and Use Tax Act was enacted in 1966. *L.*1966, *c.* 30. The legislative scheme calls for a tax on the receipts from every retail sale of tangible personal property except as otherwise provided in the Act. *N.J.S.A.* 54:32B-3(a). A retail sale is defined to exclude a resale either (1) in the same form or as converted into or as a component part of a product produced for sale by the buyer, or (2) for use by the buyer in performing services subject to the use tax where the property becomes a physical component part of the property upon which the services are performed or the property is transferred to the purchaser of the service in conjunction with the performance of the service. *N.J.S.A.* 54:32B-2(e)(1).

■ Thus it can be seen that the general legislative intent was to impose the tax on sales of tangible personal property unless that property was to be resold by the purchaser. The contemplation was that the tax in such a situation would be incurred on resale. The theoretical justification for the resale exemption was "the desire to avoid pyramiding taxes as goods move along the channels of distribution toward the marketplace." Redlich, "Sales Taxes and the Resale Exemption in the Manufacture and/or Distribution of Personal Property," 9 *Tax L.Rev.* 435, 436 (1954). In furtherance of the policy against double taxation of a single product, the Act has long exempted from the tax on sales not only the sale of personal property that is resold but also the sale of personal property that becomes a component part of a finished product that is then sold. Therefore, all parties agree in this case that if the chemical materials became a component part of the finished product, the purchase of the chemicals would not have been subject to the Sales and Use Tax.

The service aspect of the Sales and Use Tax has a somewhat different scheme. Instead of levying a general tax as on retail sales, the Act specifies five categories of services that are subject to the tax. *N.J.S.A.* 54:32B–3(b)(1) to –3(b)(5).[1] Plaintiff's laboratory services do not fall within any one of these groups and therefore are not subject to the tax.

■■ In interpreting the language of the catalyst exemption, we are mindful of the general principle that tax exemptions are to be construed narrowly. *Town of Bloomfield v. Academy of Medicine,* 47 *N.J.* 358, 363 (1966); *Princeton Univ. Press v. Borough of Princeton,* 35 *N.J.* 209, 214 (1961); *Mal Bros. Contracting Co. v. Director, Div. of Taxation,* 124 *N.J.Super.* 55, 61 (App.Div.), certif. denied, 63 *N.J.* 554 (1973). The predicate for this principle is that the existence of government depends on tax revenues; without such revenues government cannot function. The Sales and Use Tax is a significant revenue raising measure. In 1983 revenues from that tax comprised more than 26% of the total tax revenues by the State. *Dep't of Treasury, Annual Report of Division of Taxation for the Fiscal Year 1983: Partial Reprint* 4 (1983). The New Jersey Tax Policy Committee concluded that the tax was a major source of revenue and should be assessed "on as broad and equitable a base as possible." 5 *Report of the New*

---

1*N.J.S.A.* 54:32B–3(b) provides for taxation of receipts for the sale of five general categories of services:

(1) producing, fabricating, processing, printing or imprinting tangible personal property performed for persons who provide the property and do not intend to resell it;

(2) installing, maintaining, servicing or repairing tangible personal property not held for sale in the regular course of business, with certain exceptions, such as laundering and dry cleaning;

(3) storing tangible personal property not held for sale in the regular course of business;

(4) maintaining, servicing or repairing real property, with certain exceptions; and

(5) advertising services, except when used primarily in newspapers and magazines.

*Jersey Tax Policy Committee* 67 (1972). It may also be noted that plaintiff bears the burden of proving that the monetary receipt is not subject to the tax. *N.J.S.A.* 54:32B–12(b); *see Jamouneau v. Division of Tax Appeals,* 2 *N.J.* 325, 330 (1949).

The Legislature originally and by several amendments set forth various specific exemptions from the Act, including *N.J. S.A.* 54:32B–8.20, quoted above. *N.J.S.A.* 54:32B–8.1 through –8.38. Prior to the adoption of the catalyst exemption, now designated subsection 8.20, the purchase of materials consumed in manufacturing the finished product was subject to the tax. In contrast, the cost of materials bought and then used and incorporated into the finished product to be sold was excluded from the tax, as mentioned above, since the definition of retail sale excluded such purchases. The addition of subsection 8.20 equalized the situation, so that the acquisition of materials that were used and consumed in producing the end product, but that did not become a component part of the finished product, were also tax-exempt.

Subsection 8.20 refers to situations in which the materials, such as chemicals, "do not become a component part of *the* finished product." (Emphasis supplied). Use of the article "the" indicates that the Legislature envisioned a specific product to be sold at the conclusion of the processing. *See also* 5 *Report of New Jersey Tax Policy Committee, supra,* at 74 (indicating that the catalyst exemption was intended to preclude taxation of chemicals that are vital to the production of a product but are not included in it). We agree with Judge Lasser that "[t]hese words ["the finished product"] do not contemplate the furnishing of a service. The 'catalyst exemption' makes no reference to services; its context is refining or chemical processing operations resulting in a finished product." 4 *N.J.Tax* at 282. If the Legislature had intended that the exemption would apply when the materials were used in the processing operation and no finished product was involved, it could have easily so provided.

The plaintiff reasons that the Legislature expressly referred to "tangible personal property" in certain exemption subsections, *N.J.S.A.* 54:32B–8.14, –8.16, and –8.17, and that since subsection 8.20 has no such reference, it is not limited to chemicals used to produce tangible personal property, but also applies to chemicals used in rendering services. The short answer to this argument is that many exemption subsections apply only to tangible personal property without using those words. *See N.J.S.A.* 54:32B–8.18, –8.21 to –8.28.

Alternatively, plaintiff claims that the laboratory report is a finished product. We agree with Judge Lasser that the sale of such a report is a sale of information and, as such, is a service, rather than a sale of tangible personal property. 4 *N.J.Tax* at 282. *See Spencer Gifts, Inc. v. Director, Div. of Taxation,* 182 *N.J.Super.* 179, 3 *N.J.Tax* 482 (1981); *cf. Commerce Union Bank v. Tidwell,* 538 *S.W.*2d 405, 407–08 (Tenn. 1976) (sale of computer software was sale of intangible knowledge rather than tangible personal property); *First Nat'l Bank v. Bullock,* 584 *S.W.*2d 548, 550–51 (Tex.Civ.App.1979) (sale of license for computer software was sale of intangible personal property). Purchasers of the plaintiff's services pay essentially for the information resulting from the laboratory testing—not for the plaintiff's expenses in purchasing the paper and in reducing the information to written form. These latter expenses are inconsequential and merely incidental to the essential service. No separate charge is made for those expenses. *See N.J.S.A.* 52:32B–2(e)(3)(A). *See Accountants Computer Servs. v. Kosydar,* 35 *Ohio St.*2d 120, 131, 298 *N.E.*2d 519, 527 (1973) (determining taxability depends on "the real object sought by the buyer"); *see also Fingerhut Prods. Co. v. Commissioner of Revenue,* 258 *N.W.*2d 606 (Minn.1977); *Dun & Bradstreet v. City of New York,* 276 *N.Y.* 198, 11 *N.E.*2d 728 (1937); *Janesville Data Center, Inc. v. Wisconsin Dep't of Revenue,* 84 *Wis.*2d 341, 267 *N.W.*2d 656 (1978).

The test results could be transmitted to customers by telephone instead of by a written report. If the plaintiff's interpretation were accepted, the form of the delivery of the information would control its taxability. We cannot agree that the Legislature had any such intent.

Moreover, the laboratory report cannot be "the finished product" for it is not the direct result of a processing operation that is performed on tangible personal property with the aid of chemicals. *See Tuscan Dairy Farms, Inc. v. Director, Div. of Taxation,* 4 *N.J.Tax* 92, 95 (1982). The chemicals are used not in producing the report but in producing a chemical reaction on blood or other material that is the subject of the test.

Application of the tax is consistent with the policies underlying exemptions from the Sales and Use Tax. The only tax in this situation is on the sale of the chemicals. There is no tax on plaintiff's sales of its services to its customers. Thus, no pyramiding occurs, and the policy of fostering this broad-based tax by imposing a tax on the sale of the chemicals is not offset by any countervailing policy against double taxation.

Judgment affirmed.

*For affirmance*—Chief Justice WILENTZ and Justices CLIFFORD, SCHREIBER, HANDLER, POLLOCK, O'HERN and GARIBALDI—7.

*For reversal*—None.