773 A.2d 1220 (2001)
340 N.J. Super. 173
L & L OIL SERVICE, INC., Petitioner-Appellant,
v.
DIRECTOR, DIVISION OF TAXATION, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued April 30, 2001.
Decided June 26, 2001.
*1221 Harold Leib Clifton, argued the cause for appellant (Harold Leib & Associates, *1222 attorneys; Mr. Leib and Elisa Leib, on the brief).
Carol Johnston argued the cause for respondent (John J. Farmer, Jr., Attorney General, attorney; Mary C. Jacobson, Assistant Attorney General, of counsel; Ms. Johnston, Deputy Attorney General, on the brief).
Before Judges PETRELLA, NEWMAN and WELLS.
The opinion of the court was delivered by PETRELLA, P.J.A.D.
L & L Oil Service, Inc. (L & L), a New Jersey corporation, appeals from the entry of judgment in the Tax Court upholding a sales tax assessment by the Division of Taxation (Division) on its business operations of collecting waste oil. The Tax Court opinion is reported at 18 N.J. Tax 514 (Tax 2000).
In the Tax Court L & L's complaint challenged the final determination of the Director of the Division (Director) assessing L & L sales tax and interest during an audit period from 1990 through 1992. L & L contends that the services it provides in the collection and transportation of waste oil in what it calls an "integrated transaction" are exempt from the imposition of sales tax. It sought abatement of the assessed taxes and interest as well as seeking attorney's fees.
On appeal, L & L asserts that the Tax Court Judge erred in holding that the service it provides constitutes the "maintaining, servicing or repairing" of personal property under N.J.S.A. 54:32B-3(b)(2) or of real property under subsection (4). In addition, L & L argues that a portion of its charges are exempt from the tax under N.J.S.A. 54:32B-3(b) as sales for resale and under N.J.S.A. 54:32B-8.11 as transportation charges. Moreover, L & L argues that the Tax Court Judge erred in declining to read the Sales and Use Tax Act in pari materia with the Department of Environmental Protection (DEP) statutes requiring certification to perform services on underground storage tanks. In addition, L & L asserts that the judge erred in refusing to grant a waiver under N.J.S.A. 54:49-11b of interest on the assessment. L & L also asserts error in the Tax Court's quashing its subpoena of a Division employee and permitting the Director to rely on N.J.S.A. 54:32B-3(b)(2) as a basis for the assessment. On October 8, 1998, the parties signed a pretrial order in which the Director acknowledged that the sales tax was imposed under N.J.S.A. 54:32B-3(b)(4), which provides for sales tax on "[m]aintaining, servicing or repairing real property." Whether the tanks (generally ranging in size from 275 to 1,000 gallons) from which L & L collects materials constitute real property under the statute was listed in the pretrial order as an issue for trial.
In its trial brief, L & L apparently argued that it should be assessed no tax for those tanks too small to be deemed "real property" under N.J.S.A. 54:32B-3(b)(4). The Director replied that even if certain tanks were considered personal property because they were too small to constitute real property, L & L was subject to sales tax under N.J.S.A. 54:32B-3(b)(2) for "maintaining, servicing, [or] repairing tangible personal property."
L & L moved before trial to preclude the Director from relying on N.J.S.A. 54:32B-3(b)(2) as a partial basis for the assessment. In an April 5, 1999 letter opinion the Tax Court Judge concluded that L & L would suffer no prejudice by permitting the Director to rely on N.J.S.A. 54:32B-3(b)(2) and denied the motion. However, he permitted L & L to request *1223 additional discovery and an adjournment, if necessary, for further preparation.
On April 12, 1999, L & L requested the opportunity to depose four Division employees and requested an adjournment of the trial date. The Director opposed deposition of the Division employees, and L & L withdrew its motion to extend discovery for the depositions. L & L also sought an order allowing it to use an expert witness, and was allowed to submit the report of one expert witness.
On August 9, 1999, L & L subpoenaed a Division employee, Tax Services Specialist Denise Lambert, to appear at trial and produce any documentation prepared by any employee of the "Tax Counselor's Office" regarding removal and transportation of hazardous waste from oil tanks. Lambert was the "Tax Counselor" who, in a July 1, 1993 advisory letter, responded to L & L's inquiry regarding sales tax on hazardous waste removal. Also, on August 11, 1999, the Director was subpoenaed to produce Lambert and the requested documentation. The judge quashed the subpoena on the grounds that Lambert's testimony and the documentation would not be relevant and would unduly delay the proceedings. The judge also concluded that the internal documents and testimony as to conversations with others in the Tax Counselor's Office regarding the preparation of such documents was privileged, and thus inadmissible.
The facts are essentially gleaned from the joint stipulation submitted by the parties, the testimony of L & L's trial witnesses and the Tax Court Judge's opinion. L & L presented three witnesses at trial: its expert witness, its vice-president and its accountant. The Director presented no witnesses.
L & L is a refiner and also engages in pumping oil, sludge and antifreeze (collectively "waste materials") from the storage tanks of gasoline service stations, industrial properties and occasionally, residential properties. During the years in question its customers paid L & L a fee to remove the waste materials and sometimes clean empty tanks. The tanks varied in size, generally between 275 to 1,000 gallons.
The waste materials are pumped into an L & L tanker truck and transported to its facility, where the materials are refined or processed for sale.[1] The purification process requires the separation of water and oil from the sludge. L & L disposes of the waste water and sludge and sells the separated oil at a profit. L & L's vicepresident testified that waste materials that did not meet their recycling specifications could be returned to the generator of the waste but were normally disposed of off-site, sometimes for an additional fee. L & L's vice-president further testified that in his fifteen years with the company, it returned waste materials to the generator perhaps ten to thirty times. The Tax Court Judge found this testimony incredible, suggesting it "was molded to suit a theory of non-taxability developed by L & L for purposes of trial." Id. at 529.
During the audit period, L & L normally charged a lump sum for removal of waste materials. However, some invoices included a separate transportation charge. L & L's accountant testified that payments it received for the removal of waste materials were not treated as income, but as a *1224 reduction in the cost of the processed material it later sold.
Generally, L & L did not charge customers sales tax for the removal of waste materials, but some invoices did indicate such a charge. L & L attributed this inconsistency to confusion over whether the sales tax applied. Ultimately, it determined not to charge the sales tax based upon advisory letters from the Tax Counselor's branch of the Division, and an article in New Jersey State Tax News.[2]
The Division issued an assessment for sales tax due for the audit period of $305,032, plus interest to July 24, 1994, of $100,173, for a total of $405,205. Based on exemption certificates subsequently provided by L & L, the Division modified the assessment and fixed L & L's sales tax liability at $97,773.33, plus interest to August 20, 1997 of $36,678.88, for a total of $134,452.21. On June 1, 1996, L & L made a partial payment under an Amnesty Program of $45,000, thus the balance of sales tax due became $52,773.33, plus interest.
The judge held that the services provided by L & L, i.e., the removal of wastes from storage tanks, "permitted the continued use of the tanks for their intended purpose ... and, therefore, such removal constituted `maintenance' or `servicing' of the tanks under N.J.S.A. 54:32B-3(b)(2) and (4)." 18 N.J. Tax 514, 527-528.

I.
L & L contends the Tax Court erroneously permitted an amendment to the pretrial order "on the eve of trial" by allowing the Director to rely at trial upon N.J.S.A. 54:32B-3(b)(2) in addition to N.J.S.A. 54:32B-3(b)(4). It argues that this shifted the focus from whether the tanks constituted real property to whether L & L's business constituted maintaining, servicing or repairing the tanks.
Despite L & L's unsupported assertions to the contrary, oral amendments to the pretrial order, although not encouraged, are permissible in the sound discretion of the trial judge. See R. 4:25-1 and R. 4:9-2; Wilkins v. Hudson County Jail, 217 N.J.Super. 39, 44, 524 A.2d 1274 (App. Div.), certif. denied, 109 N.J. 520, 537 A.2d 1304 (1987). The court rules afford flexibility in amending pretrial orders "where necessary to subserve the presentation of the merits of the action, provided the adverse party will not be prejudiced thereby." Fluoro Electric Corp. v. Smith Transport Ltd., 58 N.J.Super. 287, 294, 156 A.2d 153 (App.Div.1959), aff'd, 32 N.J. 277, 160 A.2d 627 (1960).
While L & L may have had to alter its case somewhat as a result of the judge's ruling, the judge offered sufficient time to L & L for additional discovery and preparation.

II.
L & L argues that the Tax Court erred in quashing the subpoena to a Division employee to testify about advisory letters she and her colleagues sent to L & L and other similar entities regarding the applicability of sales tax to their businesses. L & L also sought "[a]ny opinion letters promulgated by her and/or the Tax Counselor's Office with regard to the removal of hazardous waste from oil tanks and the transportation of same, and any non-privilege[d] material relied upon by her to draft such letters."
L & L claims that the Tax Court misinterpreted the issue and that the testimony and documents went to whether interest and penalties should have been *1225 waived and were relevant for that purpose. Examination of the record demonstrates that L & L's purpose in seeking Lambert's testimony and the accompanying documentation was not limited to the waiver of interest and penalties argument. L & L specifically noted that it sought to introduce the testimony to demonstrate that Lambert had a contrary view on the applicability of sales tax to businesses such as L & L than the Director, and that Lambert's view was based on "a much better understanding of the factual basis of [L & L's] business than the auditor ..." Thus, L & L improperly sought to use Lambert's testimony to advance her allegedly contrary legal conclusions. See N.J.R.E. 702; Boddy v. Cigna Property & Cas. Cos., 334 N.J.Super. 649, 659, 760 A.2d 823 (App. Div.2000) (expert witnesses may not render opinions on issues of law).
Whether Lambert's testimony and the requested documents would have been relevant on waiver of penalties and interest and should have been allowed for that purpose is a separate question. Evidence is relevant if it has "a tendency in reason to prove or disprove any fact of consequence to the determination of the action." N.J.R.E. 401. The issue thus is viewed as whether Lambert's testimony and the requested documentation would tend to prove or disprove L & L's waiver claim.
N.J.S.A. 54:49-11(b) provides:
The director shall waive the payment of any part of any penalty or any part of any interest attributable to the taxpayer's reasonable reliance on erroneous advice furnished to the taxpayer in writing by an employee of the Division of Taxation acting in the employee's official capacity, provided that the penalty or interest did not result from a failure of the taxpayer to provide adequate or accurate information.
Here Lambert's testimony would have been of minimal relevance to the waiver issue. Under the waiver statute the inquiry is whether Lambert's written response was erroneous as a matter of law in light of L & L's inquiry and whether L & L reasonably relied on that answer to its detriment. While Lambert could offer some testimony on those issues, it would be duplicative, considering that the inquiry and written response are in the record. See N.J.R.E. 403; State v. Johnson, 120 N.J. 263, 298, 576 A.2d 834 (1990) (testimony that is cumulative as to certain issues is of minimal probative value). Thus, the exclusion of Lambert's testimony and the documentation was not reversible error because it had little probative value in light of the contents of the letters. We discuss the reliance aspect in Point VII.

III.
L & L argues that its waste removal service does not in any way repair, service or maintain the storage tanks, and thus is not subject to the sales tax under N.J.S.A. 54:32B-3(b)(2) or (4).
We generally afford deference to an agency's interpretation of a statute that it is charged with enforcing. GE Solid State v. Dir., Taxation Div., 132 N.J. 298, 306, 625 A.2d 468 (1993). Hence, the Director's assessment of sales tax due is accorded a presumption of correctness. Meadowlands Basketball Assocs. v. Div. of Taxation, 19 N.J. Tax 85, 90 (Tax 2000), aff'd, 340 N.J.Super. 76, 773 A.2d 1160 (App.Div.2001). Moreover, exemptions from taxation are strictly construed. Thus, L & L bears the burden of proving that its services fall outside the statute's coverage. N.J.S.A. 54:32B-12(b); Metpath, Inc. v. Dir., Div. of Taxation, 96 N.J. 147, 153, 474 A.2d 1065 (1984).
N.J.S.A. 54:32B-3 provides, in pertinent part:

*1226 There is imposed and there shall be paid a tax of 6% upon:

* * *
(b) The receipts from every sale, except for resale, of the following services:

* * *
(2) Installing tangible personal property, or maintaining, servicing, repairing tangible personal property not held for sale in the regular course of business,...

* * *
(4) Maintaining, servicing or repairing real property, ...
The issue is whether the service of waste removal by L & L constitutes maintaining, servicing or repairing real or personal property within the meaning of the statute. Although the Legislature has not defined those terms, the phrasing leads to the conclusion that the activity is taxable if it constitutes "servicing" under the statute, if servicing is considered or equates with the providing of a service.[3]Cf. GE Solid State v. Dir., Taxation Div., supra (132 N.J. at 307, 625 A.2d 468).
In construing N.J.S.A. 54:32B-3(b)(4), the Tax Court applied the dictionary definitions of "maintain," "service" and "repair" as quoted in Newman v. Director, Div. of Taxation, 14 N.J. Tax 313, 323 (Tax 1994), aff'd o.b., 15 N.J. Tax 228 (App.Div.1995):
"Maintain" is defined in Webster's Seventh New Collegiate Dictionary (G. & C. Merriam Co.1967) as "to keep in an existing state" or "to preserve from failure or decline." "Repair" is defined as "to restore by replacing a part or putting together what is torn or broken; fix" or "to restore to a sound or healthy state; renew." "Service" is defined as "to repair or provide maintenance for."
Applying those definitions, Newman held that hardwood floor refinishing services are subject to sales tax because the services renew the floor's finish. Although we agree with the application of those terms in Newman, the term, "service" in Newman is more akin to a narrower use of the term as when a vehicle (or even an appliance) is taken in for service to fix a condition, or for preventive maintenance to deter a breakdown.
L & L claims that it is in the business of reprocessing oil for sale, and that waste removal is merely a consequence of acquiring raw materials for its integrated waste removal business that should not be taxed.[4]
*1227 L & L's services clearly do not constitute repair under either the Tax Court's definition in Newman or under ordinary language usage. Moreover, we disagree with the Tax Court's application of the statutory term of "maintaining" to L & L's operations. Maintaining also connotes more the concept of repair or preventive maintenance as opposed to emptying a tank so that it can be refilled. Waste oil removal can be seen at most as a service that allows the tank owner to continue to use the tank to store waste or even to avoid accidental leakage.
Nor do we find that L & L's providing of periodic waste oil removal service is the maintaining, improvement or repair of real property. To apply those terms here would distort the language of the statute and bring echos of Humpty Dumpty's words in Lewis Carroll's Through the Looking Glass, "When I use a word, ... it means just what I choose it to meanneither more nor less." The Oxford Dictionary of Quotations 135, ¶ 21 (3d ed.1979).
We conclude, however, that the term "servicing" in N.J.S.A. 54:32B-3(b) was intended to and does include the providing of a service, such as removal of waste fluids from a tank which remains in use for the benefit of its owner or user.

IV.
Next, we turn to whether N.J.S.A. 54:32B-8.11 exempts L & L from taxation for "receipts from charges for the transportation of persons or property." L & L claims that the Tax Court should have permitted it to apportion the monies it received between removal and transportation charges, and that it should not be liable for sales tax for transportation charges.
There is little published New Jersey caselaw on the transportation exemption. In Maher Terminals v. Dir., Div. of Taxation, 212 N.J.Super. 164, 168, 514 A.2d 532 (App.Div.1986) (quoting Report of the New Jersey Tax Policy Committee, Part V at 72 (1972)), we noted that the Legislature included the transportation exemption because of "`(1) the virtually insurmountable administrative problems of imposing such a tax and (2) the fact that such transportation is conducted on an interstate, as well as intrastate business.'"
The record indicates that L & L normally charged its customers a lump sum and that a separate transportation charge was not consistently charged. Because transportation costs were not generally charged, we leave that issue for future determination.

V.
L & L also contends that its removal of oily waste is merely the process of acquiring raw materials for resale and is thereby exempt from sales tax pursuant to N.J.S.A. 54:32B-3(b). That section specifically exempts sales of services for resale from sales tax to avoid tax pyramiding, to ensure that "[i]n transactions involving sales of tangible personal property and services, only the final retail sales are subject to tax." Boardwalk Regency v. Director *1228 of Tax, 17 N.J. Tax 331, 339 (Tax 1998), rev'd on other grounds, 18 N.J. Tax 328 (App.Div.1999); accord Metpath, Inc. v. Dir., Div. of Taxation, supra (96 N.J. at 151, 474 A.2d 1065).
L & L reads the resale exemption too broadly. As we previously observed, exemptions from taxation are strictly construed. GE Solid State v. Dir., Taxation Div., supra 132 N.J. at 307, 625 A.2d 468; Metromedia, Inc. v. Dir., Div. of Taxation, 97 N.J. 313, 326, 478 A.2d 742 (1984). In asking us to construe the payments it receives for the removal of oily waste as sale for resale transactions, L & L mischaracterizes its business relationship with its customers. Presumably, this argument would only apply where L & L is the purchaser. It has no applicability in the audit period involved here. This is not a case where L & L has purchased raw materials which it will then process into an item subject to sales tax. Instead, L & L, at least in the time frame involved here, was paid to take waste, or as it prefers to characterize it, raw materials, and refine it and then sell the refined product, without collecting a tax, to other entities. It is clear that its charges for removing the waste oils were for the service of pumping and removing the waste oils, and not for the reprocessing operation. That L & L processes the waste and then sells it to make a profit is distinct from the fees collected for the removal of the wastes.[5] The present record does not establish pyramiding of tax during the audit period. We leave that issue for possible subsequent consideration for other periods if the facts change. No exemption has been established here as a sale for resale under N.J.S.A. 54:32B-3(b).

VI.
N.J.S.A. 58:10A-21 et seq. regulates the underground storage of hazardous substances in storage tanks. N.J.S.A. 58:10A-24.2(a) specifically provides that "[n]o business firm shall engage in the business of performing services on underground storage tanks at underground storage tank sites for purposes of complying with the requirements of [N.J.S.A. 58:10A-21 et seq.] unless the business firm has been certified in accordance with [N.J.S.A. 58:10A-24.3]...." See also N.J.A.C. 7:14B-13.1(a). L & L contends that these statutes and regulations should be read in pari materia with the Sales and Use Tax and that if a business is not required to be certified to service underground storage tanks under the DEP statutes or regulations then it cannot be deemed to maintain, service or repair storage tanks under the Sales and Use Tax. We reject this contention.
L & L relies on Administrative Code definitions of repair or maintenance in N.J.A.C. 7:27-8.1 in support of its argument. N.J.A.C. 7:27-8.1 is related to air pollution control and unrelated to underground storage tanks and thus is inapplicable. Neither N.J.S.A. 58:10A-21 et seq. nor its supporting regulations make any mention of maintenance or repair of underground tanks and there is no support for L & L's claim that all maintenance, service or repair of storage tanks requires a permit.
The use of the term "service" in this statute and the DEP regulations employ a narrower use of the term "service," similar to having a vehicle or appliance "serviced," as we alluded to previously. N.J.A.C. 7:14B-13.2 specifically enumerates the *1229 classifications of "services" for which certification is required:
(a) An individual or business firm may apply for certification in any one or more of the following classifications of underground storage tank services:
1. Installation which may be either entire system installation or release detection monitoring system installation;
2. Closure;
3. Tank Testing;
4. Subsurface evaluation; and
5. Corrosion protection system analysis which may be either cathodic protection specialist or cathodic protection tester.
In sum, the DEP regulation does not require that all services relating to storage tanks require a certification, rather it merely enumerates a list of services which pose a risk of groundwater contamination such that those performing the enumerated services must be certified to do so.
For statutes to be read in pari materia they must "have the same purpose or object." Richard's Auto City, Inc. v. Dir. Div. of Taxation, 140 N.J. 523, 540, 659 A.2d 1360 (1995). In enacting the DEP statutes the Legislature sought to prevent groundwater pollution (see N.J.S.A. 58:10A-21) and it did so (through the DEP) by requiring certification for certain services that pose a risk to groundwater. The Sales and Use Tax Act was enacted, not with an eye toward pollution, but toward raising revenue. Thus, the statutes need not be read in pari materia due to their divergent goals. Even if we were to read the statutes together, nothing in the DEP statutes or regulations indicates that L & L's business of removing oily waste from storage tanks does not constitute providing a service to personal property.

VII.
Finally, L & L contends that any accrued interest on its tax liability should be waived pursuant to N.J.S.A. 54:49-11b because it reasonably relied on erroneous advice from Division employees. Waiver of interest under N.J.S.A. 54:49-11b (quoted supra, Point II) requires that (1) an authorized Division employee furnishes written advice; (2) the advice is based on adequate and accurate information from the taxpayer; (3) the advice is erroneous; and (4) the taxpayer must reasonably rely on the advice. Tischler v. Dir., Div. of Taxation, 17 N.J.Tax 283, 296 (Tax 1998).
L & L bases its claim upon several advisory letters from the Division and an article in the New Jersey State Tax News (published by the Division). Of the several letters which L & L purports to rely on, only one is addressed to L & L Oil, and another is addressed to Lionetti Oil Recovery, Inc., with which L & L claims to have later merged. L & L argues that it should be able to rely upon additional letters to other companies in the same industry to establish its waiver claim. This approach would be problematic because differences in business operations could lead to different tax consequences for those businesses.
In any event, the Tax Court properly concluded that none of the inquiries provided sufficient detail regarding L & L's business. Moreover, considering the limited information provided regarding L & L's business, the Division's advice cannot be said to have been erroneous on its face.
In L & L's only inquiry to the Division it described its business as follows: "L & L operates pumper trucks which collect waste oil and water from gasoline service stations, industrial properties and residential properties. This waste is pumped into L & L pumper truck and removed. All transfers are manifested as *1230 required by the hazardous waste facility regulations." The Division responded by a July 1, 1993 letter that post-dated the audit period of January 1990 to December 1992. Hence, L & L could not have reasonably relied on the letter for that period. See id. at 297.
In an October 11, 1988 inquiry from Lionetti Oil Recovery, Inc., Lionetti described its business as "a hazardous waste facility whose primary business is the removal, transportation, disposal, and reclamation of hazardous waste." In response to this description, the Division responded that these services were not taxable. The information provided was an inadequate description of L & L's operations during the audit period. In many circumstances hazardous waste removal might have been nontaxable for other reasons such as a capital improvement under N.J.S.A. 54:32B-3(b)(4).
Simply put, the Tax Court properly concluded that the advisory letters provided by L & L did not entitle it to a waiver under N.J.S.A. 54:49-11b.
Affirmed, as modified.
NOTES
[1] It was represented at oral argument that L & L sells its refined product to companies that mix it with other fuels to burn in bunkers or boilers. Apparently no sales tax is collected on L & L's sales of this refined product because of other statutory exemptions. L & L is licensed to transport hazardous waste and to run a hazardous waste facility, but not to service solid waste.
[2] Apparently, this is published by the Division.
[3] The New Jersey Sales and Use Tax Act was based on the New York sales tax statute. New York cases interpreting its statute afford some help, but do not resolve the precise issue here. Like New Jersey, New York imposes sales tax on the sale of services maintaining, servicing or repairing real or personal property, but includes garbage disposal which is exempt in New Jersey. N.J.S.A. 54:32B-2(b)(4); N.Y. Tax Law § 1105(c)(3) and (5) (McKinney). Those terms are defined by New York administrative regulations as "all activities that relate to keeping [real or tangible personal property] in a condition of fitness, efficiency, readiness, or safety or restoring it to such condition." 20 N.Y.C.R.R. 527.5(a)(3) and 527.7(a)(1). There are no comparable regulations adopted by the Division in this State.
[4] L & L relies upon two New York Tax Appeals Tribunal cases, In re Seneca Foods Corp., 1995 WL 416504 (N.Y. Tax App. Trib. 1995), and In re Marisol, Inc., 1996 WL 11836 (N.Y. Tax App. Trib.1996), in support of its argument. In these cases, however, the issue was limited to a determination of whether waste removed had value or was trash, and thus whether the service was taxable as trash removal under New York law. As noted, however, garbage removal is exempt in New Jersey if "performed on a regular contractual basis for a term not less than thirty days...." N.J.S.A. 54:32B-3. Thus, L & L's reliance on these cases is misplaced. Moreover, in a subsequent decision similar to the case at bar, In re Olin Corp., 1996 WL 306703 (N.Y. Div. Tax App. 1996), the New York Division of Tax Appeals "held that the removal, transportation and treatment/disposal of industrial or hazardous waste ... constitutes an integrated trash removal service subject to tax under the provisions of Tax Law § 1105(c)(5)." Id. at 3 (citing In re Bristol Meyers Co. Indus. Div., 1994 WL 518879 (N.Y. Tax App. Trib.1994); In re Waste Conversion, Inc., 1994 WL 479343 (N.Y. Tax App. Trib.1994); In re General Electric Co., 1992 WL 51149 (N.Y. Tax App. Trib. 1992)).
[5] Apparently, the market price for crude oil has determined and may determine in the future whether L & L is paid to collect the waste oil it collects or has to pay for it.