PER CURIAM.
Plaintiffs Joseph J. Murphy and Diane Fitzmyer-Murphy appeal from a final decision of the New Jersey Tax Court denying their motion for summary judgment and granting summary judgment in favor of defendant, the Director of the Division of Taxation (Division), which had denied plaintiffs’ request for a refund of income taxes previously paid. Murphy v. Dir., Div. of Taxation, 26 N.J.Tax 432, 436 (Tax 2012). On appeal, plaintiffs argue the court erred as a matter of law. We disagree and affirm.
The facts are not disputed. On June 12, 2009, plaintiffs submitted an amended income tax return for calendar year 2005 (NJ-1040X). Originally, they had timely filed a joint New Jersey gross income tax return in 2005 (2005 NJ-1040), which reported and paid applicable taxes resulting from dividends and capital gains income. As a result of a claimed $1,756,359 decrease in total income for 2005, plaintiffs sought a refund of $157,535, plus applicable interest.
The change in income as reported by plaintiffs on the NJ-1040X related to Joseph’s sale of an interest in Refco, Inc. (Refco). Refco was a commodities and futures trading brokerage conglomerate. We need only summarize the necessary details relevant to the issue on appeal, noting more specific information of the events is set forth in the Tax Court’s opinion.[1] Id. at 436-37. Suffice it to say, Joseph, who was an officer and employee of Refco, sold a portion of his stock interest through a leveraged buy-out (LBO), realizing capital gains income of $9,466,000 in 2004 and $4,142,000 in September 2005. Later, Refco initiated an initial public offering (IPO), and Joseph realized dividend income of $381,558 in 2005 from the public sale of stock. Plaintiffs reported the capital gain income from these two transactions on their 2005 NJ-1040.
*296 Subsequent events revealed Refco had inaccurately reported its financial position, “including at the times of the LBO and IPO.” Id. at 437. Refco filed a voluntary petition for bankruptcy and three “officers were indicted for orchestrating and participating in a massive fraudulent scheme to manipulate the financial statements of various Refco-related eompanies[.]” Ibid. No evidence showed Joseph was involved in the wrongdoing. Ibid. However, an adversary proceeding was initiated by the bankruptcy trustee seeking to avoid alleged fraudulent and/or preferential transfer payments by Refco prior to its bankruptcy filing, and a separate forfeiture action was initiated by the United States seeking to seize Joseph’s investment account. Id. at 437-38. On December 30, 2008, Joseph paid $5 million to settle each of these two matters. Id. at 438.
Plaintiffs filed their NJ-1040X on June 12, 2009, claiming the $10 million represented repayment of a portion of income previously reported in 2005. Id. at 439. Because the amount paid in settlement of the litigations exceeded plaintiffs’ total reported income for 2005, they devised a formula calculating what they believed represented the respective share of the LBO gains and dividends reported in 2005. Ibid. They asserted this amount was, “in effect, a forfeiture[,]” and therefore, their 2005 income was reduced, lessening their 2005 income tax obligation. Ibid. Using the newly computed income, plaintiffs calculated they overpaid their 2005 income taxes and requested a refund. Ibid. After review by the Division’s Individual Tax Audit Branch (ITAB), plaintiffs’ refund request was denied. Id. at 440.
Plaintiffs filed a protest with the Division’s Conference and Appeals Branch, which, following a meeting, directed reconsideration of plaintiffs’ NJ-1040X by the ITAB. In a November 5, 2010 letter, the ITAB auditor who previously considered plaintiffs’ NJ-1040X concluded the refund request was timely filed; however, the claim was invalid. The auditor advised any refund “requires that any deduction for repayment must be claimed in the year of repayment[,]” which would be 2008, not 2005. Plaintiffs again submitted a protest.
*297 Following the Director’s review, the Division denied the refund request on January 21, 2011. Ibid. Relying on then-recently issued New Jersey Technical Advisory Memorandum # 7, the Division determined a refund claim was not appropriate, stating “if a taxpayer must return income ... already included in income [when computing income taxes], a deduction for this amount in the year of repayment is allowed under the ‘claim of right doctrine.’ ”
Plaintiffs filed a complaint in the Tax Court challenging the Division’s final determination, alleging the claim of right doctrine is “a creature of federal law,” inapplicable to state income tax claims.
Upon the parties’ cross-motions for summary judgment, the Tax Court judge issued a written opinion denying plaintiffs’ and granting the Division’s motion for summary judgment. Id. at 436. Finding “[b]oth the plain language and overall structure of the [Gross Income Tax] Act lead to the conclusion that the tax is an annual assessment, based on discrete events that take place during that tax year[,]” id. at 443, the judge concluded plaintiffs properly included the income when received in 2005, and although the refund request was timely, he found the terms of settlement reached with the United States Attorney and bankruptcy trustee in no way altered plaintiffs’ entitlement to the 2005 funds, obviating any refund request, id. at 447-48. The judge noted amended returns permit taxpayers to correct inaccuracies in original tax filings. Id. at 448. Finding such a circumstance inapplicable under the facts presented, he rejected plaintiffs’ attempt to recompute their 2005 tax liability. Id. at 448-49. An order memorializing this decision was filed on July 24, 2012. Plaintiffs’ appeal ensued.
Our review of a decision by the Tax Court is limited. Estate of Taylor v. Dir., Div. of Taxation, 422 N.J.Super. 336, 341, 28 A.3d 852 (App.Div.2011). The Tax Court’s findings will not be disturbed unless we conclude they are arbitrary or lack substantial evidential support in the record. Yilmaz, Inc. v. Dir., Div. of Taxation, 390 N.J.Super. 435, 443, 915 A.2d 1069 (App.Div.) (citations omitted), certif. denied, 192 N.J. 69, 926 A.2d 854 (2007).
*298 Further, when reviewing summary judgments, we employ the same standard as the trial judge. Prudential Prop. & Cas. Ins. Co. v. Boylan, 307 N.J.Super. 162, 167, 704 A.2d 597 (App.Div) (citations omitted), certif. denied, 154 N.J. 608, 713 A.2d 499 (1998). We consider whether a genuine issue of fact existed, and if not, whether the trial judge’s legal ruling was correct. Walker v. Alt. Chrysler Plymouth, Inc., 216 N.J.Super. 255, 258, 523 A.2d 665 (App.Div.1987).
We also acknowledge the Director and the Tax Court have expertise in the “specialized and complex area” of tax statutes. Metromedia, Inc. v. Dir., Div. of Taxation, 97 N.J. 313, 327, 478 A.2d 742 (1984) (citations omitted). As a general rule, the Director’s assessments carry a presumption of correctness. Yilmaz, supra, 390 N.J.Super. at 440, 915 A.2d 1069 (citations omitted). In any event, we need not defer to legal determinations made by the Director or the Tax Court. Our review of these conclusions is de novo. See Am. Fire & Cas. Co. v. N.J. Div. of Taxation, 189 N.J. 65, 79, 912 A.2d 126 (2006) (stating appellate tribunal is in no way bound by agency’s determination of a strictly legal issue (quotation marks and citations omitted)); Manalapan Realty, L.P. v. Twp. Comm, of Manalapan, 140 N.J. 366, 378, 658 A.2d 1230 (1995) (noting “[a] trial court’s interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference”).
On appeal, plaintiffs focus on the judge’s failure to reverse the Division’s final decision, which they contend erroneously relied on the federal claim-of-right doctrine. Plaintiffs also maintain their timely NJ-1040X properly requested a refund based on a change in 2005 income, which should have been granted.
To support then’ position, plaintiffs cite Wigton v. Director, Division of Taxation, which involved the taxpayers’ claim for a refund when capital gains income from corporate liquidation distributions received in one tax year were required to be repaid four years later pursuant to a litigation settlement agreement. 12 N.J.Tax 373, 375 (Tax 1992). The taxpayers were permitted to claim a deduction on their federal income tax return in the year of *299 repayment, equivalent to the amount of excess tax previously paid in the year of receipt of the liquidation distributions, as allowed by 26 U.S.C.A. § 1341(a)(4). Id. at 376. Thereafter, the taxpayers filed an NJ-1040X, seeking to amend their tax obligation for the year of receipt by reducing the amount initially reported as capital gain income that was realized from the liquidation distributions. Ibid. The Tax Court considered whether the taxpayers had timely filed the amended return and request for refund. Id. at 379.
In its discussion, the Tax Court mentioned the claim-of-right doctrine, as then incorporated in § 1341(a)(4), (5), noting “the New Jersey Legislature has not adopted the federal claim-of-right alternative calculations allowing a taxpayer to calculate tax due in the year of repayment using the original payment year as the basis for calculation instead of the repayment year.” Ibid. Plaintiffs highlight this statement, and argue in Wigton, the New Jersey Tax Court abrogated application of the claim-of-right doctrine. They therefore conclude the Division’s application of the doctrine, through Technical Advisory Memorandum # 7, was arbitrary, capricious and unsupportable. Plaintiffs explain their position, suggesting had the claim-of-right doctrine applied to a New Jersey tax refund claim, then the Tax Court would not have needed to consider the timeliness of the Wigtons’ NJ-1040X. We are not persuaded.
For context, we first recite what has become known as the claim-of-right doctrine, as well as its application set forth in the Internal Revenue Code (IRC). The doctrine was initially expressed by the United State Supreme Court in North American Oil Consolidated v. Burnet, wherein the Court held:
If a taxpayer receives earnings under a claim of right and without restriction as to its disposition, he has received income which he is required to return, even though it may still be claimed that he is not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent.
[286 U.S. 417, 424, 52 S.Ct. 613, 615, 76 L.Ed. 1197, 1200-01 (1932).]
Under the doctrine, “if a taxpayer is required to return amounts which previously have been included in income, the taxpayer is permitted a deduction in the year of repayment.” Wigton, supra, *300 12 N.J.Tax at 377 (citations omitted). The taxes due for the year of receipt would not be affected.
When the United States Supreme Court was again requested to reconsider this position in Healy v. Commissioner of Internal Revenue, a matter where the taxpayers sought to reduce the amount of taxable income previously reported, rather than claim a deduction in the year- of repayment, the Court rebuffed the proposition, stating:
The inequities of treating an amount as income which eventually turns out not to be income are urged upon us. The Government concedes that each of these taxpayers is entitled to a deduction for a loss in the year of repayment of the amount earlier included in income. In some cases, this treatment will benefit the taxpayer; in others it will not. Factors such as the tax rates in the years involved and the brackets in which the income of the taxpayer falls will be controlling. A rule which required that the adjustment be made in the earlier year of receipt instead of the later year of repayment would generally be unfavorable to taxpayers, for the statute of limitations would frequently bar any adjustment of the tax liability for the earlier year. Congress has enacted an annual accounting system under which income is counted up at the end of each year. It would be disruptive of an orderly collection of the revenue to rule that the accounting must be done over again to reflect events occurring after the year for which the accounting is made, and would violate the spirit of the annual accounting system. This basic principle cannot be changed simply because it is of advantage to a taxpayer or to the Government in a particular case that a different rule be followed.
[345 U.S. 278, 284-85, 73 S.Ct. 671, 675, 97 L.Ed. 1007, 1013 (1953) (footnote omitted).]
Thereafter, in adopting section 1341 of the 1954 IRC, Congress chose to alleviate some of the perceived inequities arising in these situations. See H.R.Rep. No. 1887, 86-87 (1954); S.Rep. No. 1622, 118-119 (1954). As an alternative to claiming a deduction in the year of repayment as allowed by § 1341(a)(4), § 1341(a)(5) also sets forth specific provisions for an alternative remedy, permitting taxpayers to claim a tax reduction in the current year by recomputing their tax obligation in the year of receipt and using the amount of the tax increase resulting from reporting the income that was required to be repaid.
The claim-of-right doctrine results from the adoption of an annual accounting system as an integral part of the tax code. United States v. Skelly Oil Co., 394 U.S. 678, 680-81, 89 S.Ct. 1379, 1381, 22 L.Ed.2d 642, 647 (1969). The doctrine addresses the inclusion in taxable income of receipts under “[a] claim of right *301 without ‘restriction on use[.]’ ” Am. Auto. Ass’n v. United States, 367 U.S. 687, 700, 81 S.Ct. 1727, 1734, 6 L.Ed.2d 1109, 1117 (1961) (citations omitted).
In Wigton, supra, the Tax Court recognized New Jersey’s Gross Income Tax Act (the Act), N.J.S.A. 54A:1-1 to 10-12, contains no provision similar to section 1341 of the IRC. 12 N.J.Tax at 379. However, this was not the issue under review. Rather, the matter before the Tax Court was whether the Division properly rejected the Wigtons’ refund claim as untimely. Id. at 376. The Wigtons argued the IRS had modified their federal tax obligation; therefore, a change in income had been determined by the IRS. Ibid. As required by N.J.S.A. 54A:8-7, the Wigtons reported their acceptance of the change and sought a refund of taxes paid. Ibid. They asserted their amended return was timely because the limitations period was extended pursuant to N.J.S.A. 54A:9-8.[2] Id. at 376-77.
We reject plaintiffs’ contention, which suggests the Tax Court in Wigton, supra, held the claim of right doctrine inapplicable to State income tax claims. Further, plaintiffs’ contention that the Wigtons’ refund claim was denied solely because it was late cannot be supported.
The Tax Court’s observation that “the New Jersey Legislature has not adopted the federal claim-of-right alternative calculations [,]” merely notes the Act has no parallel to section 1341 of the IRC, which allows qualifying taxpayers the option of electing alternative remedies. Wigton, supra, 12 N.J.Tax at 379 (emphasis added). The comment does not suggest the claim of right doctrine has no application when the issue arises in respect of State income tax claims.
Moreover, the Tax Court included the explanation of the claim of right doctrine as a foundation to its analysis of whether the *302 § 1341 deduction granted to the Wigtons’ by the IRS should be considered as a change or correction in federal taxable income as a result of the IRS action, when examining the State refund request.
N.J.S.A. 54A:8-7 mandates a taxpayer notify the State within ninety days of final federal disposition, or of change or correction in federal income tax liability, and requires a taxpayer to acknowledge or refute the IRS action. Id. at 379-80. The Tax Court concluded the IRS did not alter the Wigtons’ tax return, but merely referred to that tax year to calculate the § 1341 deduction. Id. at 380. Because the earlier return was neither changed nor corrected, the extension for filing a refund under N.J.S.A 54A:9-8(c) was inapplicable. Ibid.
We emphasize the claim-of-right doctrine addresses the inclusion of income in the year received. Whether relief is afforded when income which was previously claimed and subject to taxation and is surrendered or forfeited, is addressed by § 1341, which has no parallel in the Act. Understanding this basic point, we are hard-pressed to understand how the application or abrogation of the claim-of-right doctrine controls disposition of the issues on appeal.
Plaintiffs do not allege the LBO and dividend income when received was not income under N.J.S.A 54A:5-1, or that the money should not have been reported on their 2005 NJ-1040. Rather, they argue the $10 million remitted in settlement of the two legal actions filed following discovery of Refco’s fraud equate to a reduction in income for tax year 2005, making their initial reporting on the 2005 NJ-1040 a mistake and thereby entitling them to a refund. We conclude review of the question is answered by review of the Act’s provisions that are directed to when a taxpayer may receive a refund of income taxes previously paid.
The Act “imposed a tax for each taxable year” on the taxpayer’s annual gross income. N.J.S.A 54A:2-1. “When examined as a whole, the ... Act establishes a tax on New Jersey gross income reduced only by deductions, exemptions and credits expressly recognized by the Legislature.” Reck v. Dir., Div. of Taxation, 345 N.J.Super. 443, 449, 785 A.2d 476 (App.Div.2001) (citation *303 omitted), aff'd, 175 N.J. 54, 811 A.2d 458 (2002). The Act’s legislative design follows the premise: “Taxation is the rule and exemption is the exception to the rule.” AT & T Co. v. Dir., Div. of Taxation, 13 N.J.Tax 534, 543 (Tax 1993). Plaintiffs bear the burden of establishing “a clear statutory basis” for their claim that taxes were not owed on the monies paid in settlement of the federal legal actions. Reck, supra, 345 N.J.Super. at 449, 785 A.2d 476 (citing Amerada Hess Corp. v. Dir., Div. of Taxation, 107 N.J. 307, 319-20, 526 A.2d 1029 (1987), aff'd, 490 U.S. 66, 109 S.Ct. 1617, 104 L.Ed.2d 58 (1989); Metpath, Inc. v. Dir., Div. of Taxation, 96 N.J. 147, 153, 474 A.2d 1065 (1984); Princeton Univ. Press v. Borough of Princeton, 35 N.J. 209, 214, 172 A.2d 420 (1961)).
Refunds are issued only when taxes are overpaid. See N.J.S.A. 54:49-14 (stating procedure for taxpayer to file claims for refund of taxes assessed and/or paid); N.J.S.A. 54:49-15 (authorizing refunds in instances where the Director determines there has been “an overpayment of tax”); N.J.S.A 54:49-16 (permitting refund of taxes erroneously collected or paid under a mistake of fact or law); N.J.S.A 54A:9-7(a) (authorizing refund of overpayment of income tax refunded if tax liability is satisfied). See also Exxon Corp. v. Hunt, 109 N.J. 110, 128, 534 A.2d 1 (1987) (“[OJrdinarily a taxpayer that pays a tax found to be invalid is entitled to a refund.” (citations omitted)).
In discerning the meaning of the phrase “overpayment of taxes,” which is not otherwise defined in the Act, the Court directs we use the best indicator of the intent of the Legislature — the language used in the statute. The Court expresses this principle as follows:
“The Legislature’s intent is the paramount goal when interpreting a statute and, generally, the best indicator of that intent is the statutory language. We ascribe to the statutory words their ordinary meaning and significance, and read them in context with related provisions so as to give sense to the legislation as a whole. It is not the function of this Court to rewrite a plainly-written enactment of the Legislature nor presume that the Legislature intended something other than that expressed by way of the plain language. We cannot write in an additional qualification which the Legislature pointedly omitted in drafting its own enactment, or engage in conjecture nor surmise which will circumvent the plain meaning of the act. Our duty is to construe and apply the statute as enacted.”
*304 [Fitzgerald v. Coddington Stables, 186 N.J. 21, 31, 890 A.2d 933 (2006) (quoting DiProspero v. Penn, 183 N.J. 477, 492, 874 A.2d 1039 (2005) (internal quotation marks and citations omitted)).]
Plaintiffs undeniably received the capital gains income from the LBO and dividends in 2005, and properly reported and paid taxes on the income received. Plaintiffs filed a timely claim for “refund of an overpayment of income taxes.” See N.J.S.A. 54A:9-8(a) (requiring a “[c]laim for credit or refund of an overpayment of income tax” to be filed within three years of the date the return was filed or two years from the time the tax was paid). Thus, the question presented is whether their claimed refund presents an error in the original income reported on the 2005 NJ-1040 or in the calculation of the taxes paid. We conclude the answer is no.
Plaintiffs did not pay a tax determined not to be due or calculate taxes using income they did not receive. Rather, following their decision to resolve, rather than contest, claims asserted by the bankruptcy trustee and United States Attorney, they maintain the settlement payments were a portion of the income received in 2005. The record contains sparse information regarding the litigations. We glean the bankruptcy trustee sought repayment of salary and other monies paid to Joseph by Refco as alleged voidable preferential insider payments, 11 U.S.C.A § 547, or fraudulent transfers, 11 U.S.C.A. § 544. The United States claimed Joseph’s brokerage account was subject to forfeiture presumably based on securities fraud.
We find no provision in the Act allowing reeomputation of income previously claimed because the taxpayer settles a suit based on theories attacking the transactions underlying the income payments. Although there may be some relationship between the litigations fueled by Refco’s fraud and Joseph’s income, the money, when received, was not segregated, and there is no basis to discern the settlement was repayment of same dollars. In fact, the amount repaid substantially exceeds the income reported, making it impossible to determine the 2008 settlement sought reclamation of the LBO and dividend payments reported in 2005. The facts do not conclusively show an error in the amount of income reported or tax paid by plaintiffs in 2005.
*305 We also note, as did the Tax Court, plaintiffs voluntarily settled these claims. Murphy, supra, 26 N.J.Tax at 448. There was no adjudication, finding, or stipulation Joseph wrongfully received and/or had no legal entitlement to the 2005 LBO and dividend payments. Ibid. In fact, Joseph stated the settlement was motivated by his desire to draw to a quick close contentions that otherwise could create concerns for his corporate character. Ibid. As the Tax Court judge observed: “These are perfectly acceptable reasons to settle litigation. However, having elected to resolve the claims asserted against them, plaintiffs also chose to forego a judicial determination of whether they were entitled to the funds they received from the LBO and ... [d]ividend[s] in 2005.” Ibid. Accordingly, plaintiffs’ decision to resolve the litigation does not equate to a return of income improperly paid. See Continental Trailways, Inc. v. Dir., Div. of Motor Vehicles, 102 N.J. 526, 548, 509 A.2d 769 (1986) (“It long has been the general common-law rule that where a party, without mistake of fact, fraud, duress, or extortion, voluntarily pays money on a demand that is not enforc[ea]ble against him, he may not recover it.” (citations omitted)).
We discern no basis to support the argument plaintiffs’ 2005 income was recomputed, other than plaintiffs’ suggestion that it was so. In fact, plaintiffs offer no legal authority to support their characterization of the settlement transactions as a decision to forfeit a portion of income. Consequently, they fail to show an overpayment of taxes, subject to refund, occurred.
Finally, we have carefully reviewed the record and the arguments presented by counsel and conclude the remaining arguments presented, but not specifically discussed in our opinion, have been determined to lack sufficient merit to warrant discussion in our written opinion. R. 2:11-3(e)(1)(E). We conclude the 2008 settlement payment may not serve as a basis to retroactively recalculate plaintiffs’ 2005 taxable income for the purpose of recovering a refund.
Affirmed.

 For an in depth account of Refco’s collapse and the ensuing litigation, see VR Global Partners, L.P. v. Bennett (In re Refco Capital Markets), 586 F.Supp.2d 172, 174-77 (S.D.N.Y.2008).

 N.J.S.A. 54A:9-8(c) extends the three-year limitations period to file a state refund request when a taxpayer is required to report an IRS-required change or correction in income as reported on the taxpayer’s federal income tax return; this is treated as an overpayment for federal tax purposes.