TAX COURT OF NEW JERSEY



**Kathi F. Fiamingo**
**Judge**

120 High Street
Mount Holly, NJ 08060
(609) 288-9500 Ext 38303

**NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE TAX COURT**
**COMMITTEE ON OPINIONS**

September 6, 2018

Zachary T. Gladney, Esq. (Pro Hac Vice)
Steven L. Penaro
Alston & Bird
90 Park Avenue
New York, NY 10016

Ramanjit K. Chawla
Deputy Attorney General
Division of Law
R.J. Hughes Justice Complex
P.O. Box 106
25 Market Street
Trenton, New Jersey 08625-0106

> Re:  Spencer Gifts, LLC v. Director, Division of Taxation
> Docket No. 012530-2015
> Spirit Halloween Superstores, Inc. v. Director, Division of Taxation
> Docket No. 012526-2015

Dear Counsel:

This letter constitutes the court's opinion with respect to plaintiff's motion for summary judgment. For the reasons explained more fully below, plaintiff's motion is denied.

I.  Findings of Fact and Procedural History

The court makes the following findings of fact based on the submissions of the parties.

During the years in question, 2008 – 2012, Spencer Gifts, LLC ("Spencer") and Spirit Halloween Superstores, Inc. ("Spirit"), (collectively "plaintiffs"), operated 1,100 retail stores throughout the United States and Canada. Plaintiffs maintain a "home office" in Egg Harbor

*

Township, New Jersey. They purchased "various types of printed advertising materials" from a New Jersey vendor, Print Art. The invoices issued by Print Art for the materials purchased by plaintiffs identify the "ship to" address as plaintiffs' New Jersey home address. Print Art charged plaintiffs sales tax on each of the invoices for the printed materials purchased and remitted the same to defendant.

Plaintiffs filed a claim for refund of a portion of the sales tax charged on the print materials purchased during the period April 2008 through December 31, 2012 for Spencer and during the period of January 1, 2009 through December 31, 2012 for Spirit. Plaintiffs alleged that despite the identification of their New Jersey address as the "ship to" address on the invoices, the printed materials were not received by them at that location, but were delivered directly to the various store locations, only a small percentage of which were located in New Jersey. Plaintiffs assert that the printed materials shipped to their business locations outside New Jersey are not subject to sales tax.

Defendant ("the Director") denied the refund claims, finding that plaintiffs failed to prove that the transactions were exempt or excluded from sales tax and that the vendor correctly collected and remitted the tax. Plaintiffs filed a timely protest which was ultimately denied. The Director issued a final determination on May 27, 2015. Plaintiffs timely filed complaints in the Tax Court contesting the Director's determinations.

Plaintiffs filed a joint motion for partial summary judgment in June 2017. The Director filed a cross motion for partial summary judgment. Both motions were heard on October 31, 2017 and were denied by the court in a letter opinion dated November 15, 2017. Thereafter plaintiffs filed the present motion for summary judgment which the Director opposed. Oral argument was held on August 6, 2018 at which time the court denied plaintiff's motion for the reasons set forth

on the record. After oral argument plaintiffs made a request pursuant to R. 4:46-3 that the court ascertain "what material facts . . . exist without substantial controversy" and enter an appropriate order.

The court now supplements its bench decision denying plaintiffs' motion for summary judgment.

II.     Summary Judgment

Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact challenged and the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). In Brill v. Guardian Life Ins. Co., 142 N.J. 520, 523 (1995), our Supreme Court established the standard for summary judgment as follows:

> [W]hen deciding a motion for summary judgment under Rule 4:46-2, the determination whether there exists a genuine issue with respect to a material fact challenged requires the motion judge to consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.

"The express import of the Brill decision was to 'encourage trial courts not to refrain from granting summary judgment when the proper circumstances present themselves.'" Tsp. of Howell v. Monmouth Cnty. Bd. of Taxation, 18 N.J. Tax 149, 153 (Tax 1999) (quoting Brill, supra, 142 N.J. at 541).

"[T]he determination [of] whether there exists a genuine issue with respect to a material fact challenged requires the motion judge to consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of

the applicable evidentiary standard, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Ibid. at 523.

### A. Standard of Review

The review of this matter begins with the presumption that determinations made by the Director are valid. See Campo Jersey, Inc. v. Director, Div. of Taxation, 390 N.J. Super. 366, 383 (App. Div.); L&L Oil Service, Inc. v. Director, Div. of Taxation, 340 N.J. Super. 173, 183 (App. Div. 2001); Atlantic City Transp. Co. v. Director, Div. of Taxation, 12 N.J. 130, 146 (1953). "New Jersey Courts generally defer to the interpretation that an agency gives to a statute [when] that agency is charged with enforc[ement.]" Koch v. Dir., Div. of Taxation, 157 N.J. 1, 8 (1999) (citing Smith v. Dir., Div. of Taxation 108 N.J. 19, 25 (1987)). Determinations by the Director are afforded a presumption of correctness because "[c]ourts have recognized the Director's expertise in the highly specialized and technical area of taxation." Aetna Burglar & Fire Alarm Co. v. Dir., Div. of Taxation, 16 N.J. Tax 584, 589 (Tax 1997) (citing Metromedia, Inc. v. Dir., Div. of Taxation, 97 N.J. 313, 327 (1984)). The Supreme Court has directed courts to accord "great respect" to the Director's application of tax statutes, "so long as it is not plainly unreasonable." Metromedia, supra, 97 N.J. at 327. However, where the interpretation of an administrative agency is plainly at odds with a statute, that interpretation will not be upheld. See Oberhand v. Dir., Div. of Taxation, 193 N.J. 558, 568 (2008) (citing GE Solid State v. Dir., Div. of Taxation, 132 N.J. 298, 306 (1993)).

### B. Legal Issues and Analysis

The central issue in this matter is determination of the location where plaintiffs received or took possession of the printed material from Print Art. If plaintiffs received the materials purchased from Print Art at Print Art's location in New Jersey as alleged by the Director, than the

imposition and collection of sales tax was appropriate and required by applicable law. If instead plaintiffs can demonstrate that those materials were shipped directly to plaintiffs' store locations throughout the United States and Canada as they allege, the imposition and collection of sales tax for the out-of-state deliveries was in error and should be refunded.

Plaintiffs assert that they provided Print Art with lists of their business locations within and without the State and instructed Print Art to "distribute the advertising materials directly" to those locations. Plaintiffs assert that Print Art delivered these individual shipments directly to its various store locations within and without the State. Plaintiffs' proofs in support of its position, consist of certifications of two of their employees, together with numerous exhibits. Plaintiffs also submit, as they did in their prior motion, a letter alleged to have been sent to them by Douglas Powell, VP Finance of Print Art ("Powell"), dated October 16, 2014 which plaintiffs maintain supports their position. As stated by the court in its prior opinion this letter is inadmissible hearsay. In opposition to plaintiffs' submission, among other things the Director presents the deposition testimony of Powell.

Powell testified that Print Art would place an order for various items of printed material. Plaintiffs would provide instructions to Print Art to "box up" the materials in individual shipments for delivery to plaintiffs' individual store locations. Thus, for example, if plaintiffs ordered 7 different items of printed material produced in different quantities, plaintiffs would instruct Print Art to box up a certain number of each printed item to be delivered to its different store locations.

Powell confirms the separation of each order into individual shipments however plaintiffs produced no proofs as to any instruction issued with respect to any particular order to either the Director in support of their refund claim or to the court in support of their motion. Powell testified

that there were "work orders" created for each job which would confirm the instructions, but nothing was produced by plaintiffs.

Plaintiffs next assert that once the advertising materials were boxed up for delivery to the ultimate store locations, Print Art would affix a Fed Ex label to each individual shipment designating the store location destination throughout the United States and Canada. Again Powell confirms the creation of individual shipping labels. However, although Powell's correspondence of October 2014 indicates that the materials would then be "picked up by Federal Express" he testified that plaintiffs would "send a truck to pick [the print materials] up:" and that "Spencer's would contract the trucker, Print Art would load out the product onto the truck, and the trucker would deliver it." Powell did not identify the "trucker" as FedEx (or as any other common carrier or shipper) or as anything other than a "trucker" and did not know where the trucker would deliver the materials.[1]

Powell further testified that Print Art imposed the sales tax "[b]ecause it was [Print Art's] opinion at the time that they took possession of the products when they hired the trucker, it was their transportation. So when the product loaded out of our dock onto their truck, they took possession of it." Powell testified that he was aware that plaintiffs questioned the imposition of the sales tax when it was imposed but was not part of any discussion regarding the issue.

Although plaintiffs assert that Powell's testimony is consistent with their position that Print Art shipped the materials directly to its various store locations, the court finds his testimony contradictory and inconsistent. While Powell clearly testified that shipping labels to both in-State and out-of-State locations were affixed to each of the bundled materials, his testimony did not

---

[1] Neither the Deputy Attorney General conducting the deposition nor plaintiff's counsel questioned the witness directly as to whether the "trucker" was a FedEx employee.

establish who took possession of the materials or delivered them to the destinations set forth on the shipping labels. This lack of clarity illustrates a genuine issue of material fact exists precluding the entry of summary judgment. Moreover, there is absolutely no proofs submitted as to how much of each individual shipment was delivered to any specific location.

The question of where possession was transferred is key to the resolution of the issue in this matter. "In general, every New Jersey business selling taxable items or services must collect and remit New Jersey Sales Tax when sales are completed by delivery to a New Jersey location or performance of the service in this State." New Jersey Sales Tax Guide, Bulletin S&U-4, Rev. 7/17 at 21.[2], The article continues:

> Sourcing: The definition of "sale" is any transfer of title or possession, for consideration. New Jersey is a destination state, so whether a sale of property is subject to New Jersey sales or use tax is generally based upon where delivery occurs. The new law provides specific sourcing rules which determine the location where the sale, lease or rental is deemed to occur for purposes of applying each state's sales and use tax. In addition to general sourcing rules for sale transactions, there are additional rules for lease and rentals of tangible personal property; of motor vehicles, trucks and certain aircraft; and for sales, lease and rentals of transportation equipment. Sales continue to be sourced based on the location where delivery is taken by the purchaser. (N.J.S.A. 54:32B-3.1; 3.2; 3.3; 3.4)
>
> [http://www/nj.gov/treasury/taxation/pdf/ssutanotice.pdf]

The sourcing of sales is more particularly detailed in the Sales and Use Tax ("S&U") statute, which specifies:

> The retail sale, excluding lease or rental, of a product shall be sourced as follows:
>
> (1) If the product is received by the purchaser at a business location of the seller, then the sale shall be sourced to that business location.

---

[2] http://www.state.nj.us/treasury/taxation/pdf/pubs/sales/su4.pdf.

(2) If the product is not received by the purchaser at a business location of the seller, then the sale shall be sourced to the location where receipt by the purchaser (or the purchaser's donee, designated as such by the purchaser) occurs, including the location indicated by instructions for delivery to the purchaser (or donee), known to the seller.

(3) If paragraphs (1) and (2) of this subsection do not apply, then the sale shall be sourced to the location indicated by an address for the purchaser that is available from the business records of the seller that are maintained in the ordinary course of the seller's business when use of this address does not constitute bad faith.

(4) If paragraphs (1), (2), and (3) of this subsection do not apply, then the sale shall be sourced to the location indicated by an address for the purchaser obtained during the consummation of the sale, including the address of a purchaser's payment instrument, if no other address is available, if use of this address does not constitute bad faith.

(5) If the rules of paragraph (1), (2), (3), or (4) of this subsection do not apply, including the circumstance in which the seller is without sufficient information to apply the previous rules, then the location shall be determined by the address from which tangible personal property was shipped, from which the digital good or the computer software delivered electronically was first available for transmission by the seller, or from which the service was provided (disregarding for these purposes any location that merely provided the digital transfer of the product sold).

[N.J.S.A. 54:3B-3.1(a)]

Further, the referenced statute specifies:

"Receive" and "receipt" mean:

Taking possession of tangible personal property,

. Making first use of services, or

Taking possession or making first use of digital goods, whichever comes first.

The terms "receive" and "receipt" do not include possession by a shipping company on behalf of the purchaser.

[Ibid.]

Thus, the identity of the "trucker" taking possession of the printed materials from the seller, Print Art, is a material fact in the resolution of this matter. If FedEx (or another "shipping company") took possession of the printed material from Print Art's New Jersey facility and delivered that material to plaintiff's store locations, the source of the sales for the imposition of the sales tax would be the States of the final destination. If instead the "trucker" that took delivery was employed by plaintiffs and was not a third party "shipping company" it is possible that title and possession of the materials transferred to plaintiffs at Print Art's New Jersey location. The Director has placed sufficient contradictory evidence into the record to cause there to be a dispute as to a genuine issue of material fact. Plaintiff failed to establish that no such dispute exists.

To further clarify, plaintiff presented proofs consisting of a spreadsheet identified as "FeEx Shipping Detail" attached to an affidavit of Spencer's Senior Vice President of Finance purporting to confirm that the shipments in the spreadsheet were picked up by FedEx from Print Art's location and delivered to plaintiff's various store locations. The affidavit does not satisfy the requirements of N.J.R.E. 803(c)(6)[3]. In fact, plaintiffs' counsel indicated that the spreadsheet had been downloaded from the FedEx web site, leading to the conclusion that plaintiffs did not make the record in the regular course of business and that it was not the regular practice of plaintiffs to make the record thus suggesting that the record presented may not be trustworthy or in compliance with

_____

[3] N.J.R.E. 8-3(c)(6) provides that a business record satisfying its requirements is not excluded as a hearsay statement. Specifically, it provides: A statement contained in a writing or other record of acts, events, conditions, and, subject to Rule 808, opinions or diagnoses, made at or near the time of observation by a person with actual knowledge or from information supplied by such a person, if the writing or other record was made in the regular course of business and it was the regular practice of that business to make it, unless the sources of information or the method, purpose or circumstances of preparation indicate that it is not trustworthy.

the court rule. Moreover, the data presented in the spreadsheet was for only a six month period out of the almost five years under review.

Additionally, plaintiffs provided no proofs as to what portion of each invoice for which sales tax was imposed should be considered exempt from tax because delivery was to an out-of-state location. As noted above, although Powell testified that work orders instructed Print Art on how to box up each order for delivery to individual store locations plaintiffs did not provide those work orders or any reliable proofs as to how much of a specific taxed invoice went to a different location. Although plaintiffs present the previously questioned FedEx shipping detail to support their contention that each shipment was individually boxed and delivered to the various store locations, this document, if reliable, does not appear to detail how much of each shipment went to any particular location.

In this regard Plaintiffs assert that the court should apply the principles of §313.1 of the Streamlined Sales and Use Tax Agreement ("SSUTA")[4] and Rule 313.1, Sourcing Direct Mail, of the Streamlined Sales Tax Governing Board, Rules and Procedures. Plaintiffs maintain that the application of the foregoing rule would permit plaintiffs to present "any reasonable, but consistent and uniform, method of allocation that fairly represents the state and local jurisdictions where delivery or distribution was made to recipients." Plaintiffs assert that their position that each shipment of printed materials purchased was distributed in-state and out-of-state in proportion to the number of stores located in-state and out-of-state satisfies the rule. Thus for each invoice, that

---

[4] The SSUTA is a multistate Agreement intended to "simplify and modernize sales and use tax administration in the member states in order to substantially reduce the burden of tax compliance." SSUTA §101. The State Treasurer was authorized to enter into the SSUTA by the Legislature. N.J.S.A. 54:32B-48.

proportion of stores located out-of-state during the year in question should be sourced out-of-state and only that proportion of stores located in New Jersey should be subjected to tax.[5]

Plaintiffs acknowledge that both §§313 and 313.1 of the SSUTA and the Rules issued thereunder apply to "advertising and promotional direct mail" which is defined as,

> a.　printed material that meets the definition of "direct mail," in Appendix C, Part 1;
>
> b.　the primary purpose of which is to attract public attention to a product, person, business or organization, or attempt to sell, popularize or secure financial support for a product, person, business or organization.　As used in this subsection, the word "product" means tangible personal property, a product transferred electronically or a service.
>
> [SSUTA §313C.1]

The definition of "Direct mail" is

> Printed material delivered or distributed by United States mail or other delivery service to a mass audience or to addresses on a mailing list provided by the purchaser or at the direction of the purchaser when the cost of the items are not billed directly to the recipients. "Direct mail" includes tangible personal property supplied directly or indirectly by the purchaser to the direct mail seller for inclusion in the package containing the printed material. "Direct mail" does not include multiple items of printed material delivered to a single address.
>
> [SSUTA App. C, Part 1.]

Plaintiff acknowledge that the materials purchased were not direct mail qualifying for the application of §313.1.　Moreover, there is no indication that the State has adopted the elective provision of §313.1 of the SSUTA such that its provisions would be applicable if the purchased materials qualified as direct mail [6].　Neither plaintiffs nor the Director provided this court with

---

[5] This position was not made clear to the court in the summary judgment motion made by plaintiffs but was clarified thereafter in a telephone conference call held by the court and the parties.

[6] §313.1 of the SSUTA provides in pertinent part, "Notwithstanding Sections 310, 310.1 and 313, a member state may elect to source the sale of all direct mail delivered or distributed from

any indication of whether the Director has any regulation similar to the principles of §313.1. It is apparent that plaintiffs' could present proofs to establish the specifics of delivery to each store location for each of the invoices in dispute. Powell testified that work orders were provided to Print Art directing it to separate each shipment. It is unclear why plaintiffs have been incapable of providing such proofs to the Director and to the court. It is equally unclear why the principles of a Rule which may not have been adopted by the State should be applied simply because plaintiffs are either unable or unwilling to present the necessary proofs. What is clear is that plaintiffs have not provided the level of proof necessary to entitle them to summary judgment on these issues

The second issue for which plaintiffs demand judgment is a refund of the sales tax imposed on what plaintiffs allege were exempt transactions pursuant to N.J.S.A. 54:32B-8.56 (receipts from sales of prewritten software delivered electronically and used directly and exclusively in the conduct of the purchaser's business exempt from sales tax). Plaintiffs presented the affidavit of an employee attesting to the fact that certain software, updates and software maintenance used exclusively in the conduct of plaintiffs' business operations was delivered electronically. While the court finds the affidavit persuasive, the court was unable to discern which purchases qualified for the exemption. That is, although some 70 pages of invoices were attached to the affidavit as "invoices between Spencer Gifts and six third-party computer software vendors," it was not made clear whether each such invoice evidences the purchase of qualifying software, updates and/or maintenance or whether some of the invoices contained other non-exempt purchases as well. The affidavit provided merely indicated that "[f]or each purchase of computer software, software

a location within the state and delivered or distributed to a location within the state pursuant to the provisions of this section."

updates, and software maintenance related to the attached Exhibits," the same were obtained by electronic delivery only and used in the plaintiffs' business. Further clarification is needed to determine the exempt purchases. At oral argument the Director agreed to review information from plaintiffs as to this issue in an attempt to resolve the issue.

For all of the foregoing reasons summary judgment was denied.[7]

II.      Application of Rule 4:46-3

At the close of oral argument plaintiffs requested that the court consider the application of R. 4:46-3 which provides,

> (a)  If on motion under this rule judgment is not rendered upon the whole action or for all the relief asked and a trial is necessary, the court at the hearing of the motion, by examining the pleadings and the evidence before it and by interrogating counsel, shall, if practicable, ascertain what material facts, including facts as to the amount of damages, exist without substantial controversy and shall thereupon make an order specifying those facts and directing such further proceedings in the action as are appropriate. Upon trial of the action the facts so specified shall be deemed established.
>
> (b)  Order for Trial. If after the inquiry prescribed by paragraph (a) of this rule it appears to the court at the hearing of the motion that the case may be fully or partially adjudicated upon limited testimony, with or without specific further discovery, the court shall, if practicable, enter an order fixing a date certain for the trial of specifically identified disputed factual issues and, if appropriate, fixing the subject, mode, and time for completion of discovery.

---

[7] The Director expresses additional concerns that plaintiffs had delayed their refund claims until the end of the limitations period and had not established that any sales tax had been paid over to the states plaintiffs now claim were due the tax. The Director maintains that since plaintiffs had acquiesced to the imposition of the sales tax by the New Jersey vendor and had not made any refund claim earlier when the other states would have been able to impose and collect tax they should now be estopped from making a claim notwithstanding its timeliness as a refund claim. As the court finds that the plaintiffs have failed to demonstrate that there is no genuine issue of material fact in dispute, the court declines to address this issue at this time.

Subsection (a) of the rule permits the court to "ascertain what material facts . . . exist without substantial controversy" so that it can "limit [] the trial" to the "triable issues actually in dispute," Pressler & Verniero, Current N.J. Court Rules, cmt. 1 onR. 4:46-3(a) (2018). See also Argurto v. Guhr, 381 N.J.Super 519, 531 (App. Div. 2005) ("When the proofs presented on a summary judgment motion reveal that certain facts are undisputed, but some limited facts remain in dispute, R. 4:46-3(b) permits the trial judge to take testimony in order to resolve those discrete issues".)

The statement of facts set forth herein establishes those facts which are not in dispute. In addition to the extent not set forth herein, those facts presented by plaintiffs in their statement of material facts which are not disputed by the Director are also not in dispute. As noted above, the remaining central issues are in substantial dispute between the parties. The court has directed the parties to attempt to narrow the issues by way of stipulation. The court will issue a case management order setting a case management conference in order to further refine the issues and establish a trial date.

Very truly yours,


Kathi F. Fiamingo, J.T.C.