ANDREW, J.T.C.
Plaintiff, George A. Blair, contests a final determination by defendant, Director of the Division of Taxation, that plaintiff’s predecessor, Hospital Portrait Service Company,[1] is liable for sales or use tax pursuant to the Sales and Use Tax Act, N.J.S.A. 54:32B-1 et seq., for its purchase or use of color photographic film that it purchased from Kodak. In a final determination letter dated March 7,1986, defendant determined that Hospital Portrait Service Company was liable for use tax of $26,340.44 plus interest and penalty of $13,433.62 and $1,317.02, respectively, for the period January 1, 1982 to December 31, 1984.
Plaintiff contends that, since the company’s purchases of film are exempt from sales tax under N.J.S.A. 54:32B-8.13(a) and -8.20 (the so-called manufacturing and catalyst exemptions, respectively), its use of the film is not taxable.[2] Defendant *348 responds that plaintiff is collaterally estopped from relitigating in the present action (hereinafter denominated HPS II) issues that plaintiff has already litigated in HPS I, namely, whether plaintiffs purchases of film are exempt under either the manufacturing or catalyst exemptions.[3] In any event, defendant argues, plaintiffs purchases do not fall within either exemption.
The parties have stipulated to limit the record in HPS II to the transcript of proceedings in HPS I. Thus, as summarized by the trial court in HPS /, the facts in HPS II are as follows:
Plaintiff is engaged in the business of taking, processing and selling photographs of newborn infants. After the pictures are taken at its facilities located in hospitals throughout the country, plaintiff collects the exposed film at its headquarters in Red Bank, New Jersey. The film is then .sent to an independent contractor who develops it into negatives and then makes photographic prints from those negatives. Both negatives and prints are then returned to plaintiff. The negatives are never sold or given to plaintiffs customers but are retained by plaintiff for three years and then destroyed. The prints are mailed from plaintiffs headquarters directly to customers.
Unexposed color photographic film consists of a sheet of flexible plastic coated with three layers of light-sensitive chemicals, known as emulsions, in a gelatin base. The purpose of the plastic is to provide a backing or carrier for the chemicals. Each emulsion is made up of a mixture of three chemicals. Unexposed color photographic paper is similar to film except that the plastic backing is replaced by a white opaque paper backing.
The processing of color film consists of two steps: the production of the color negative and the production of the color print. Color film processing comprises a series of four stages. First, the film is exposed to light through the use of a camera. Second, the film is treated with a chemical reducing agent known as a developer. Third, the film is treated with a chemical bleach. Fourth, the film is treated with a chemical “fixer” and then rinsed and dried. Various chemical reactions occur during all four of these steps. The result is a color negative. Color print processing also consists of four stages. First the photographic paper is exposed to the color negative through the use of an enlarger which shines light through the negative onto the photographic paper. Steps two through four are similar to those used to process film outlined above. The *349 result is a photographic print, which is the finished product. [HPS I, supra, 6 N.J.Tax at 307-308]
As defendant indicates, the New Jersey courts have long recognized and applied the doctrine of collateral estoppel. Our Supreme Court has recently stated:
It is well-settled that where a judgment of a court of competent jurisdiction directly determines a right, question or fact distinctly put in issue, such judgment estops the parties or their privies from thereafter relitigating the same issue in a subsequent proceeding between them, regardless of its nature or form. [Washington Tp. v. Gould, 39 N.J. 527, 533 [189 A.2d 697] (1963). See also Plainfield v. Public Service Electric and Gas Company, 82 N.J. 245 [412 A.2d 759] (1980); Allesandra v. Gross, 187 N.J.Super. 96 [453 A.2d 904] (App.Div.1982); Borough of Hasbrouck Heights v. Div. of Tax Appeals, 54 N.J.Super. 342 (App.Div.1959), and Gottdiener v. Roxbury Tp., 2 N.J.Tax 206 (Tax.Ct.1981) ]
Thus, collateral estoppel precludes the relitigation of any issue—whether of fact or law—which has actually been litigated between either the parties or their privies.[4] The objective of such preclusion is judicial finality. Allesandra, supra, 187 N.J.Super. at 103, 453 A.2d 904. However, a change in the applicable law or facts prevents the operation of collateral estoppel. See Gould, supra, 39 N.J. at 533, 189 A.2d 697; Hasbrouck, supra, 54 N.J.Super. at 249, 148 A.2d 643, and Gottdiener, supra, 2 N.J.Tax at 215.
Although collateral estoppel overlaps with, and is closely related to, res judicata, the distinguishing feature of collateral estoppel is that it alone bars relitigating issues in suits that arise from different causes of action.[5] “Recent Cases—Judgments,” 85 Harv.L.Rev. 1478, n. 3 (1972). See also Restatement, Judgments 2d, § 27 at 251-252 (1982); United Rental Equip. Co. v. Aetna Life Ins. Co., 74 N.J. 92, 101, 376 A.2d 1183 (1977); Plainfield, supra 82 N.J. at 257, 412 A.2d 759; *350 Gould, supra 39 N.J. at 533, 189 A.2d 697; Allesandra, supra 187 N.J.Super. at 103-104, 453 A.2d 904, and Hasbrouck, supra 54 N.J.Super. at 248, 148 A.2d 643.
Plaintiff insists that collateral estoppel does not bar its suit in HPS II for two reasons: (1) it seeks to litigate issues not litigated in HPS I, and in the alternative, (2) it seeks to relitigate a pure question of law that has “significant public importance.”
Neither party in HPS II has raised the question whether collateral estoppel can apply—when the facts, law and parties are the same—to different tax years.[6] However, as mentioned above, the distinguishing feature of collateral estoppel is its applicability to different causes of actions, and its purpose is finality. Thus, not applying collateral estoppel simply because different tax years (and hence, different causes of actions) are involved would go against both the nature and underlying purpose of collateral estoppel. See 85 Harv.L.Rev., supra at 1481-1482; Restatement, Judgments 2d, supra, § 27 at 265; Bass River Tp. v. Hogwallow Inc., 1 N.J. Tax 612 (Tax Ct.1980), aff’d o.b. per curiam 182 N.J.Super. 584, 442 A.2d 1055 *351 (App.Div.1982) (the Appellate Division recognized that collateral estoppel can apply when different tax years are involved. Id., 182 N.J.Super. at 586, 442 A.2d 1055); Hasbrouck, supra, 54 N.J.Super. at 248-249, 148 A.2d 643 (recognizing the applicability of collateral estoppel when different tax years are involved, but not deciding the point with respect to issues of value), and Gottdiener, supra, 2 N.J. Tax at 215 (applying collateral estoppel in a different tax year where, due to the peculiar requirements of farmland assessment, the issue barred arose in both years from the very same set of facts). See also Fink and Fink v. Comm’r of Internal Revenue, 60 T.C. 867 (1973), aff’d 512 F.2d 674 (9 Cir.1975); Hadge v. Second Federal Savings and Loan Ass’n of Boston, 409 F.2d 1254 (1 Cir.1969); United States v. Russell Manufacturing Co., 349 F.2d 13 (2 Cir.1965); Fairmont Aluminum Co. v. Comm’r of Int. Rev., 222 F.2d 622 (4 Cir.1955), and Hercules Powder Company v. United States, 167 Ct.Cl. 639, 337 F.2d 643 (1964) (all applying collateral estoppel even though different tax years were involved). As the court in Hadge aptly observed:
A party is entitled to one day in court, but only one. No reason appears why it should make a difference under what type of cloud the sun happened to set. [ 409 F.2d at 1257]
Plaintiff has not argued that the relevant facts in HPS I are separable from those involved in the present case, HPS II, because the facts in each case, while virtually identical, do involve different sales transactions and thus the doctrine of collateral estoppel is not applicable. There is, however, a prominent opinion of the United States Supreme Court which sets forth the basis for such an argument and thus must be considered. See Comm'r of Internal Revenue v. Sunnen, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1948); see also M.P. Moore v. United States, 246 F.Supp. 19 (N.D.Miss.1965).
In Sunnen, while holding that collateral estoppel would apply in tax cases for different tax years, the Supreme Court declared that even though the contracts involved in both suits were substantially identical, the fact that they were separate instru *352 ments made each contract different for collateral estoppel purposes. The Court set forth its view as follows:
... [I]f the relevant facts in the two cases are separable, even though they be similar or identical, collateral estoppel does not govern the legal issues which recur in the second case. Thus the second proceeding may involve an instrument or transaction identical with, but in a form separable from, the one dealt with in the first proceeding. In that situation, a court is free in the second proceeding to make an independent examination of the legal matters at issue ... Before a party can invoke the collateral estoppel doctrine in these circumstances, the legal matter raised in the second proceeding must involve the same set of events or documents and the same bundle of legal principles that contributed to the rendering of the first judgment. [ 333 U.S. at 601-602, 68 S.Ct. at 721; emphasis supplied, footnote omitted]
Such a rigid limitation on collateral estoppel results in a triumph of form over substance in light of identical albeit separable facts. If the limitation were applied mechanically, relitigating the validity of a single contract generally would be collaterally estopped from tax year to tax year, but not if the otherwise identical contract were re-executed each year.
In a relatively recent opinion, however, the validity of the “separable facts” test in Sunnen, was called into question by the Supreme Court in Montana v. United States, 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979). While Montana did not explicitly overrule Sunnen, the Court ignored the requirement that the facts involve the “same set of events or documents” and held that collateral estoppel applied even though some facts differed in the two cases at issue because the differing facts were not “essential to the judgment” or “of controlling significance” in the first case. Montana v. United States, supra, 440 U.S. at 158, 99 S.Ct. at 976.[7] Thus, absent significant differ *353 enees in the controlling facts the doctrine of collateral estoppel is applicable.
As indicated, however, aside from any separable facts argument the gist of plaintiffs action is the claim that it argues for the first time in this case, HPS II, that the so-called “plant integration rule” applies in New Jersey to both the manufacturing (§ 8.13(a)) and catalyst (§ 8.20) exemptions, and that, pursuant to that rule, its purchases or use of film fall within both exemptions. Consequently, the argument goes, it is not es-topped from relitigating the issues allegedly affected by that rule. Plaintiff does not argue, and this court does not find, that there has been a change in law since the decision in HPS I. Rather, plaintiff argues simply that the law in New Jersey was and is different from the court’s—both at the trial and appellate levels—perception of it in HPS I.

I.

Catalyst Exemption.

According to the catalyst exemption the following are not taxable:
Receipts from sales of materials, such as chemicals and catalysts, used to induce or cause a refining or chemical process, where such materials are an integral or essential part of the processing operation, but do not become a component part of the finished product. [N.J.S.A. 54:32B—8.20]
And as noted in HPS I:
Six conditions must be met in order to obtain this exemption:
1. There must be a sale of materials such as chemicals and catalysts.
2. The materials must be used to induce or cause a refining or chemical process.
3. The materials must be an integral or essential part of the processing operation.
4. The materials must be used in a processing operation which results in a finished product.
5. The materials must not become a component part of the finished product.
6. The finished product must be tangible personal property.
Metpath v. Taxation Div. Director, 4 N.J.Tax 277, 280, 282-283 (Tax Ct.1982), aff’d o.b. per curiam, 5 N.J.Tax 477 (App.Div.1983), aff'd 96 N.J. 147 [474 A.2d 1065] (1984). [HPS I, supra, 6 N.J.Tax at 309; emphasis supplied]
*354 Specifically, the dispute in HPS I focused on the meaning of conditions 2 and 4. Plaintiff argued that it fell within condition 2 because:
... the chemical process in this case is induced or caused by an interaction between the chemicals on the film itself and those used in the film processing operation____[Id. at 309]
and that it fell within condition 4 because:
... the processing of color film into negatives and negatives into prints is a single process which resulted in a finished product. [Id. at 309-310]
In both instances, after thorough consideration, this court rejected plaintiff’s arguments and held that the requirements of the catalyst exemption had not been met. The court specifically concluded that the film itself did not induce or cause a chemical process in compliance with condition 2. Id. at 310. With respect to condition 4 this court held:
Even if the film itself is used to induce or cause a chemical process, the chemical process is part of the film processing operation, not the print processing operation. Therefore, since the film is not used in the print processing procedure which results in the finished print product, the fourth Metpath requirement is not met and plaintiffs purchases of film are not exempt from sales tax under § 8.20. [id. at 311]
Plaintiff now asserts in HPS II that, pursuant to the plant integration rule,[8] its film is in fact “used in a processing operation which results in a finished product,”[9] and therefore fulfills the requisites of condition 4. Defendant responds that the issue has already been litigated in HPS I and that, therefore, collateral estoppel precludes plaintiff from relitigating it.
*355 Collateral estoppel does not preclude a party from litigating an issue for the first time. However, it does preclude a party from relitigating an issue in light of a different legal principle or argument—particularly when, as here, the facts and law are the same and the party had a “full opportunity” in the earlier determination to present the issue litigated in light of that principle or argument. See Gould, supra, 39 N.J. at 534, 189 A.2d 697; Starker v. United States, 602 F.2d 1341, 1345 (9 Cir.1979), and Jacob’s Fork Pocahontes Coal Co. v. Comm’r of Internal Revenue, 24 T.C. 60, 68 (1955).
Plaintiff’s reliance on the plant integration rule in HPS II is nothing more than the use of an additional legal principle in support of an issue already litigated, namely, whether its film is “used in a processing operation which results in a finished product.” Consequently, inasmuch as the facts and law are the same in HPS II as they were in HPS I, and since plaintiff had a full and fair opportunity to raise the plant integration rule in HPS I,[10] plaintiff is now precluded from relitigating the issue of whether its film is “used in a processing operation which results in a finished product,” either in light of the plant integration rule or not. In sum, plaintiff cannot relitigate an issue simply by now making the additional legal argument that the plant integration rule applies to the catalyst exemption in New Jersey.
Moreover, as noted in n. 9 above, in addition to its attempt to relitigate based on the plant integration rule, plaintiff raises in HPS II another issue, already litigated in HPS I, namely, whether its film is “used to induce or cause a refining process” pursuant to the catalyst exemption in § 8.20. With respect to this issue plaintiff offers no argument whatsoever why collat *356 eral estoppel should not apply. It does not even pretend to raise a new issue and makes no substantial argument, legal or otherwise, not previously made in HPS I relative to this point. Plaintiff does not allege a change in fact or law and provides no reason why the holding in HPS I should not control. Indeed, even if collateral estoppel did not preclude litigation, I would follow the conclusions in HPS I for reasons of stare decisis. See n. 9 above.

II.

Manufacturing Exemption.

In turn, according to the manufacturing exemption the following are not subject to tax:
Sales of machinery, apparatus or equipment for use or consumption directly and primarily in the production of tangible personal property by manufacturing, processing, assembling or refining. [N.J.S.A. 54:32B-8.13(a); emphasis supplied]
In HPS I plaintiff argued, among other things, that its photographic film constituted “equipment.”[11] After determining that photographic film was not equipment within the meaning of § 8:13(a), this court found it unnecessary to consider any further issues with respect to the manufacturing exemption.[12]
Plaintiff now argues in HPS II that its purchases of film fall within the manufacturing exemption because, pursuant to the plant integration rule, its film is “directly and primarily” used in manufacturing and processing. See N.J.S.A. 54:32B-8.13(a). *357 [13] Defendant again responds that plaintiff is making a different legal argument in support of an issue already litigated in HPS I, and that, therefore, collateral estoppel applies.
However, plaintiff has not had the opportunity in HPS I to fully litigate the issue whether its film is “directly and primarily” used in manufacturing and processing pursuant to § 8.13. Since this court held in HPS I that the film did not constitute “equipment,” it never reached the issue whether the film was used “directly and primarily” in manufacturing or processing. Consequently, collateral estoppel does not bar plaintiff from litigating that issue in HPS II.
Secondly, plaintiff argues in the alternative that, since collateral estoppel does not apply to questions of law, and since the question whether New Jersey has adopted the plant integration rule is a question of law, collateral estoppel does not preclude relitigating the issue whether plaintiff falls within the manufacturing and catalyst exemptions by virtue of the plant integration rule. However, although it may be a question of law whether New Jersey has adopted the plant integration rule, the question whether plaintiff’s purchases of film fall within the manufacturing or catalyst exemption pursuant to that rule is a mixed question of law and fact. And of any rule, collateral estoppel applies to all issues, whether of fact or law.[14] See Gould, supra, 39 N.J. at 533, 189 A.2d 697, and Restatement, Judgments 2d, supra, § 28 at 285.
*358 As noted previously in n. 13, supra, in an attempt to relitigate based on the plant integration concept, plaintiff raises in this case, HPS II, another issue already litigated in HPS I, i.e., whether its film constitutes “equipment” pursuant to the § 8.13(a) manufacturing exemption. Relative to this issue plaintiff offers no argument why collateral estoppel should not apply. Plaintiff does not allege any change in fact or law and fails to provide any reason why the holding in HPS I should not control. Additionally, if collateral estoppel did not preclude litigation on this point, stare decisis would. See n. 9, supra. Since plaintiffs film is not equipment it is not exempt under the § 8.20 manufacturing exemption.

III.

Summary.

In sum, with respect to the § 8.20 catalyst exemption collateral estoppel precludes relitigating the question of whether plaintiffs film is “used in a processing operation which results in a finished product,” even in light of the now specifically argued plant integration concept.
Even if collateral estoppel did not preclude relitigation of this issue, I would not now need to reconsider the issue nor decide whether the plant integration rule applies in a § 8.20 catalyst exemption context. Whatever the outcome of those questions, plaintiff does not fall within the § 8.20 catalyst exemption because, as decided in HPS I, its film is not “used to induce or cause a refining or chemical process.” See HPS I, supra at 309-310, and n. 9 above.
Relative to the § 8.13(a) manufacturing exemption, collateral estoppel does not preclude plaintiff from litigating in this proceeding, HPS II, the question of whether its film is used “directly and primarily” pursuant to the manufacturing exemption. However, in HPS I this court decided after thorough consideration, that plaintiffs film did not constitute “equipment.” Absent any change in fact or law, or indeed any other circumstance warranting a departure, HPS I controls for rea *359 sons of not only collateral estoppel but also stare decisis. See n. 9 above. Therefore, just as in HPS I, plaintiffs film in HPS II does not constitute “equipment” and therefore, just as in HPS I, I need not reach the question whether plaintiff’s film is used “directly and primarily” in manufacturing and processing pursuant to the plant integration rule.
In conclusion, for the reasons given, plaintiff’s purchases of color photographic film during the period January 1, 1982 to December 31, 1984 are not exempt from sales and use tax under either the manufacturing or catalyst exemption, N.J.S.A. 54:32B-8.13(a) and -8.20, respectively. Consequently, plaintiff is liable for either sales or use tax under N.J.S.A. 54:32B-14(b) or -6(A), respectively. I direct the Clerk of the Tax Court to enter judgment sustaining the Director’s final determination.

Although the transactions at issue involved Hospital Portrait Service Company, plaintiff is denominated as George A. Blair, formerly trading as Hospital Portrait Service Company because after the tax period in question here (January 1, 1982 to December 31, 1984) the assets of Hospital Portrait Service Company were sold in January 1985 to a Missouri company. George A. Blair was the owner of Hospital Portrait Service Company and has succeeded to any claims that Hospital Portrait Service Company has in this litigation. The pretrial order permitted the pleadings to be amended to reflect this change. All references to plaintiff in this opinion, however, will mean Hospital Portrait Service Company.

Unless this court finds plaintiffs purchases exempt from sales tax, plaintiff is liable for either sales or use tax under N.J.S.A. 54:32B-14(b) or -6(A), *348 respectively. See Hospital Portrait Service v. Taxation Div. Director, 6 N.J.Tax 305, 309 (Tax Ct.1983), aff'd 7 N.J.Tax 431 (App.Div.1984), certif. den. 101 N.J. 235, 501 A.2d 912 (1985) (henceforth HPS I).

In HPS I this court held that purchases of film by Hospital Portrait Service Company were not exempt for the period April 1, 1977 to March 31, 1980 under either the manufacturing or catalyst exemption provision.

Note that, before selling the assets in 1985, plaintiff Blair operated as Hospital Portrait Service Co. Therefore, I can only conclude—and neither party has disputed the conclusion—that the parties are either identical in both actions or that Blair (plaintiff in HPS II) is in privity with Hospital Portrait Service Co. (plaintiff in HPS I).

Also, unlike collateral estoppel, res judicata applies not only to issues actually litigated, but to all issues that could have been raised in the initial suit.

Also, neither party has raised the question whether collateral estoppel applies when there are alternate grounds for the first determination. In HPS I the court denied the catalyst exemption on two grounds, either of which would be alone sufficient to deny the exemption. HPS I, supra at 309-311. Indeed, under certain circumstances, e.g., in bankruptcy claims, where the risks of cursory consideration at trial and on appeal, or of the lack of adversarial zeal by either party, is particularly high, collateral estoppel may not apply to alternate grounds for a determination. See Halpern v. Schwartz, 426 F.2d 102 (2 Cir.1970), and Stebbins v. Keystone Insurance Co., 481 F.2d 501 (D.C.Cir. 1973). However, absent such special circumstances, collateral estoppel generally applies to all issues actually litigated, whether they are alternate grounds or not. See Williams v. Ward, 556 F.2d 1143 (2 Cir.1977), and Winters v. Lavine, 574 F.2d 46 (2 Cir.1978). But see Restatement, Judgments 2d, supra, § 27 at 259-260, 270. In the present matter, the written opinion in HPS I reflects that both alternate grounds were given thorough consideration. Also, plaintiff does not assert, and nothing in the record justifies concluding, that the appellate panel or litigants in HPS I were less interested in litigating each alternate ground than they would be in any matter involving alternate grounds. Consequently, the presence of alternate grounds does not prevent the application here of collateral estoppel.

It is notable that a number of lower federal courts even prior to Montana v. United States, supra, balked at applying the inflexible “separable facts" aspect of Sunnen. See Hadge, supra, 409 F.2d at 1257; Russell, supra 349 F.2d at 18; and Fink, Fairmont and Hercules all supra. As the court in Hadge put it, the difficulty with the “separable facts” concept was as follows:
The distinction, however, between facts that are the "very same” and facts that are "separable ... though ... identical,” Sunnen, supra, can be drawn only with difficulty and has been critized as too weak a hook from which to hang a decision without some other support. [Hadge, 409 F.2d at 1257]

The so-called "integrated plant" concept is designed to avoid dividing a manufacturing process into distinct steps for legal purposes if, in fact, the process is continuous and indivisible. See Niagara Mohawk Power Corp. v. Wanamaker, 286 App.Div. 446, 144 N.Y.S.2d 458 (1955).

Even if plaintiff were correct in this argument (assuming arguendo that collateral estoppel does not apply), its purchases of film would not fall within the catalyst exemption because, as the court in HPS I determined, its film is not "used to induce or cause a refining or chemical process." The facts and law have not changed since the decision in HPS I, and plaintiff does not even claim to raise a new issue. As a result, this court sees no reason, and indeed is not at liberty, to depart from the holding in HPS I, which was affirmed by the Appellate Division "substantially for the reasons given” by the Tax Court. See HPS I, supra, 7 N.J.Tax at 431.

Piaintiff does not allege and nothing in the record suggests that it lacked a full opportunity to raise in HPS I the plant integration rule. Indeed, since the facts and law in HPS I and HPS II are virtually identical, plaintiff could not seriously argue that the facts in HPS II, but not in HPS I, alerted it to its new argument based on the plant integration rule. See Starker, supra at 1345.

Plaintiff did not allege in HPS I, and does not now allege in HPS II, that its film constitutes either "machinery" or "apparatus."

Note that defendant concedes, and this court sees no reason to disagree, that New Jersey has adopted the plant integration rule with respect to the § 8.13(a) manufacturing exemption, and that it had already done so at the time HPS I was decided. See Millington Quarry v. Taxation Div. Director, 5 N.J.Tax 144, 153 (Tax Ct.1983), and N.J.A.C. 18:24-4.4(b), -4.4(c). However, defendant does not concede that the plant integration rule applies, or ever applied, to the catalyst exemption in § 8.20.

As with the § 8.20 catalyst exemption, even if plaintiff were correct in this argument (assuming arguendo that collateral estoppel does not apply), because its film is not equipment, see n. 9, above, and HPS I, supra at 313-314, its purchases of film would not be exempt pursuant to the manufacturing exemption.

Plaintiffs reliance on Plainfield v. Public Service Electric and Gas Co., 82 N.J. 245, 412 A.2d 759 (1980) is misplaced. The court there held that certain considerations of equity and the public interest could limit the applicability of collateral estoppel to a pure question of law. Id. at 259, 412 A.2d 759. Here, equity and the public interest are no more affected than in any other question of tax exemption, and a pure question of law is not involved.