NOT FOR PUBLICATION WITHOUT APPROVAL OF
THE TAX COURT COMMITTEE ON OPINIONS

SYLVESTER and YONGJIE TUOHY,

        Plaintiffs

        v.

DIRECTOR, DIVISION OF TAXATION,

        Defendant.

TAX COURT OF NEW JERSEY
DOCKET NO. 013607-2018

Approved for Publication
In the New Jersey
Tax Court Reports

Decided: March 1, 2022

Sylvester Tuohy and Yongjie Tuohy for plaintiffs (Self-Represented).

Miles Eckardt for defendant (Matthew Platkin, Acting Attorney General of New Jersey, attorney).

BEDRIN MURRAY, J.T.C.

Before the court is defendant's motion for summary judgment in the above-referenced matter challenging the Director, Division of Taxation's final determination assessing a gross income tax deficiency against plaintiffs for tax year 2014. At issue are plaintiffs' exclusion of certain items from gross income on their 2014 gross income tax return, and their calculation of the resident tax credit provided by N.J.S.A. 54A:4-1 for income subject to tax in other states or political subdivisions. With respect to the resident tax credit issue, the court rejected plaintiffs' claims, identical to those made here, in a prior litigation pertaining to their 2004 gross income tax return. As set forth more fully herein, plaintiffs are now precluded from relitigating this issue under the doctrine of collateral estoppel. As to the deficiency attendant their excluding certain items from gross income, plaintiffs argue the law is wrong and should conform, where applicable, to the Internal Revenue Code or the tax laws of the State of New York. Defendant contends that

*

as the only issues before the court are interpretations of the relevant statutes, the matter is ripe for summary disposition. For the reasons expressed below, summary judgment affirming the Director's final determination is granted.

I.  Findings of Fact and Procedural Posture

The facts in this matter are undisputed. Plaintiffs, Sylvester Tuohy and Yongjie Tuohy, a married couple residing in New Jersey, filed a 2014 New Jersey Resident Gross Income Tax (NJ GIT) return on April 11, 2015. Plaintiffs reported $107,125 in gross income, comprised of $107,058 in wages earned in the State of New York and $67 in interest. They excluded the following items from gross income: (1) dividend income of $13,880; (2) income from sale of stock amounting to $13,528, and (3) $11,573 withheld from Mr. Tuohy's wages for contribution to his I.R.C. § 403(b) retirement plan. In contrast, on their 2014 federal income tax return, plaintiffs reported $13,880 in dividend income on Schedule B, $13,528 in net long-term capital gains on Schedule D, and $65,929 in long-term capital loss carryover.

In addition to excluding the above-enumerated items on their 2014 NJ GIT return, plaintiffs claimed a resident tax credit for income subject to tax in the State of New York under N.J.S.A. 54A:4-1.

N.J.A.C. 18:35-4.1 prescribes the computation of the resident tax credit, which can be summarized as follows:

Income subject to tax by other jurisdiction (Adjusted Gross Income)
<u>before allowance for exemptions and deductions</u>   x   New Jersey Tax   =   Credit
     Entire New Jersey income

In formulating their credit, plaintiffs used the following calculus:

$\frac{\$92,070}{\$107,125}$   x   $577   =   $496 credit

Conversely, on their 2014 IT-203 Nonresident and Part-Year Resident Income Tax Return for the State of New York (2014 NY return), plaintiffs reported adjusted gross income in New York (the numerator) of $57,508 as opposed to $92,070.

Defendant, Director, Division of Taxation (Director or Division) conducted an audit of plaintiffs' 2014 NJ GIT return. In short, the Division's auditor added to plaintiffs' gross income the dividends, capital gains without carryover losses, and wages withheld from Mr. Tuohy's salary to fund his I.R.C. § 403(b) retirement plan. These additions increased plaintiffs' total gross income from $107,125 to $146,106.

In recalculating the credit for taxes paid to the State of New York, the auditor used plaintiffs' New York adjusted gross income of $57,508, as reported on their 2014 NY return, in the numerator. Their entire New Jersey income, expressed in the denominator, was increased to reflect total gross income of $146,106.

The Division adjusted plaintiffs' resident credit thusly:

$$\frac{\$57,508}{\$146,106} \quad x \quad \$1,531 \quad = \quad \$603 \text{ credit}$$

The audit resulted in a tax deficiency of $1,003, as set forth in a Notice of Deficiency issued by the Division on July 25, 2017. In a telephone conference with Mr. Tuohy on August 25, 2017, the auditor agreed to abate penalties in the amount of $137, and plaintiffs agreed to and did remit the remaining total liability of $866. On September 8, 2017, plaintiffs filed a written protest with the Division's Conference and Appeals Branch (CAB). On September 21, 2017, the CAB acknowledged receipt of the protest. By letter dated September 26, 2017, the CAB advised plaintiffs that the matter was under review, and a decision had been made to enter it into the conference cycle.

3

On June 1, 2018, plaintiffs sent the CAB a letter advising that a conference was to have been scheduled. On September 11, 2018, an administrative telephone conference took place, and on September 12, 2018, the CAB issued a report concurring with the July 25, 2017 Notice of Deficiency. On September 17, 2018, the Director issued a final determination upholding the Notice of Deficiency and advising plaintiffs of their right to appeal. On November 1, 2018, plaintiffs timely appealed the final determination by filing a complaint in the Tax Court.

II.     Summary Judgment Standard

Applications for summary judgment are governed by R. 4:46-2, which provides in pertinent part that:

> The judgment or order sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.
>
> [R. 4:46-2(c).]

In Brill v. Guardian Life Ins. Co. of America, 142 N.J. 520 (1995), the Court articulated the standard for summary review by holding that:

> [T]he determination whether there exists a genuine issue with respect to a material fact challenged requires the motion judge to consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.
>
> [Id. at 523.]

In the case at bar, the record reveals the absence of genuine issues of material fact. Further, the Director filed a statement of material facts in support of the motion for summary judgment, in accordance with R. 4:46-2(a), contending there is no factual dispute. Despite the requirement of

4

R. 4:46-2(b) that a party opposing summary judgment submit a statement either admitting or denying each material fact in the movant's statement, plaintiffs have failed to do so. As such, the court finds that plaintiffs agree with the facts submitted by the Director. Moreover, plaintiffs, in opposition to the motion for summary judgment, do not raise any issues of fact and speak solely to the legal issues in the matter. Hence, the matter is ripe for determination in a summary manner.

III. Conclusions of Law

1. Plaintiffs are precluded from relitigating their challenge to the Director's determination of the resident tax credit under the doctrine of collateral estoppel.

In support of the motion for summary judgment, defendant cites a prior unpublished tax court opinion in which plaintiffs raised the precise arguments as in this case regarding the Director's calculation of the resident tax credit for tax year 2004. See Sylvester L. and Yongjie Tuohy v. Dir., Div. of Taxation, No. 000033-2008 (Tax August 18, 2008). Those arguments were rejected by the court and final judgment entered in favor of the Director. Plaintiffs did not appeal the court's determination. Defendant argues that plaintiffs "[are] attempting a second bite at the apple" and cannot pretend to be unaware of the court's prior determination.

R. 1:36-3, which addresses the use of unpublished opinions, provides:

> No unpublished opinion shall constitute precedent or be binding upon any court. Except for appellate opinions not approved for publication that have been reported in an authorized administrative law reporter, and except to the extent required by res judicata, collateral estoppel, the single controversy doctrine or any other similar principle of law, no unpublished opinion shall be cited by any court. No unpublished opinion shall be cited to any court by counsel unless the court and all other parties are served with a copy of the opinion and of all contrary unpublished opinions known to counsel.

[R. 1:36-3 (emphasis added).]

See also Matter of Adoption of Amendments to N.J.A.C. 11:22-1.1, 459 N.J. Super. 32, 38-39, n.1 and n.2 (App. Div. 2019).

5

Accordingly, defendant provided the court and plaintiffs with a copy of this court's prior opinion and stated that no contrary unpublished opinions were known to counsel. The larger issue that the court now addresses is whether the doctrine of collateral estoppel applies to bar plaintiffs from raising their challenge to the credit calculation in this matter.

"A fundamental precept of common-law adjudication, embodied in the related doctrines of collateral estoppel and res judicata, is that a 'right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction . . . cannot be disputed in a subsequent suit between the same parties or their privies . . . .'" Montana v. United States, 440 U.S. 147, 153 (1979) (quoting Southern Pacific R. Co. v. United States, 168 U.S. 1, 48-49 (1897); see also Restatement (Second) of Judgments § 27 (1982) (stating general rule on issue preclusion); Twp. of Washington v. Gould, 39 N.J. 527, 533 (1963).

While collateral estoppel, or issue preclusion, is deemed a branch of res judicata, the doctrines are distinguishable. Allesandra v. Gross, 187 N.J. Super. 96, 103 (App. Div. 1982); Blair v. Dir., Div. of Taxation, 9 N.J. Tax 345 (Tax 1987), aff'd, 225 N.J. Super. 584, 586 (App. Div. 1988). Collateral estoppel precludes an issue adjudicated in a prior action from being relitigated in a subsequent action between the same parties. Res judicata, in contrast, bars further claims by the parties on the same cause of action when a final judgment on the merits has already been rendered. Montana, 440 U.S. at 153 (citing Cromwell v. Cty. of Sac, 94 U.S. 351, 352 (1877) (citations omitted)). The purpose of both precepts is to achieve judicial finality. Allesandra, 187 N.J. Super. at 103.

In Olivieri v. Y.M.F. Carpet, Inc., 186 N.J. 511 (2006), our Supreme Court enunciated the standard for the application of the doctrine of collateral estoppel:

> (1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3)

the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.

[Id. At 521 (quoting In re Estate of Dawson, 136 N.J. 1, 20-21 (1994)).]

"It is equally clear that '[e]ven where these requirements are met, the doctrine, which has its roots in equity, will not be applied when it is unfair to do so.'" Olivieri, 186 N.J. at 521-22 (quoting Pace v. Kuchinsky, 347 N.J. Super. 202, 215 (App. Div. 2002)); see also City of Plainfield v. Pub. Serv. Elec. & Gas Co., 82 N.J. 245, 259 (1980) (holding that equitable considerations and public interest concerns could limit the applicability of collateral estoppel to a pure question of law). The factors militating against the application of collateral estoppel include:

the party against whom preclusion was sought could not have obtained review of the judgment in the initial action; the quality or extensiveness of the procedures in the two actions were different; it was not foreseeable at the time of the initial action that the issue would arise in subsequent litigation; and the party sought to be precluded did not have an adequate opportunity to obtain a full and fair adjudication in the first action.

[Pivnick v. Beck, 326 N.J. Super. 474, 486 (App. Div. 1999).]

See Restatement (Second) of Judgments § 28 (1982).

In the context of the Tax Court, the doctrine of collateral estoppel typically asserts itself when a taxpayer challenges the same kind of assessment that he unsuccessfully contested in an earlier tax period. Blair, 225 N.J. Super. at 586; Bass River Twp. v. Hogwallow Inc., 1 N.J. Tax 612 (Tax 1980), aff'd. o.b., 182 N.J. Super. 584, 585-86 (App. Div. 1982) (the Appellate Division declined to rule out any circumstances in which a county tax board decision would bind subsequent actions before the Tax Court for later years, concluding "in the absence of evidence that the same issue was litigated the Tax Court was not bound by the prior proceedings").

7

In <u>Blair</u>, the taxpayer, a commercial photographer, appealed a final determination of the Director assessing sales or use tax for tax years 1982 and 1983 under the Sales and Use Tax Act, N.J.S.A. 54:32B-1 to 32B-55, for his purchase and use of color photographic film. <u>Blair</u>, 9 N.J. Tax at 348. The plaintiff claimed he was entitled to "manufacturing" and "catalyst" exemptions provided under N.J.S.A. 54:32B-8.13(a) and -8.20, relative to film processing. In so doing, the plaintiff reasserted the claim he brought before the Tax Court in a prior action contesting the assessment of sales and use tax for earlier years. <u>See</u> <u>Hosp. Portrait Serv. Co. v. Dir., Div. of Taxation</u>, 6 N.J. Tax 305 (Tax 1983), <u>aff'd</u>, 7 N.J. Tax 431 (App. Div. 1984).[1] In <u>Hosp. Portrait Serv.</u>, the court affirmed the Director's final determination assessing sales and use tax, rejecting the plaintiff's argument that the film constituted "equipment" for purposes of the manufacturing exemption. <u>Id.</u> at 314. Additionally, the court held that the plaintiff did not qualify for the catalyst exemption because his printing of film was not part of the "chemical process" that takes place in the processing of film by a third party. <u>Id.</u> at 311.

The plaintiff in <u>Blair</u> sought to relitigate the same issue by offering a different argument, namely, that the plant integration rule, which is intended to integrate all phases of manufacturing for legal purposes, entitled him to the manufacturing exemption. <u>Blair</u>, 9 N.J. Tax at 354. In determining that the plaintiff was precluded from relitigating the same issue as in the prior action, and affirming the Director's final determination, the court aptly held:

> Collateral estoppel does not preclude a party from litigating an issue for the first time. However, it does preclude a party from relitigating an issue in light of a different legal principle or argument—particularly when, as here, the facts and law are the same and the party had a 'full opportunity' in the earlier determination to present the issue litigated in light of that principle or argument.

---

[1] The court in <u>Blair</u> concluded that the plaintiffs in <u>Hosp. Portrait Serv.</u> and <u>Blair</u> were either identical or in privity with one another. <u>Blair</u>, 9 N.J. Tax 345, n.4.

[Id. at 355.]

In the matter before the court, plaintiffs advance nearly the identical arguments they relied on in Tuohy I[2] in seeking to relitigate the issue of their resident tax credit for tax year 2014. N.J.S.A. 54A:4-1(a) provides that a credit to a resident taxpayer "shall be allowed . . . against the tax otherwise due for the amount of any income tax or wage tax imposed for the taxable year by another state . . . or political subdivision." N.J.SA. 54A:4-1(b) limits the credit to no more than "the proportion of the tax otherwise due under this act that the amount of the taxpayer's income subject to tax by the other jurisdiction bears to his 'entire New Jersey income.'"

N.J.A.C. 18:35-4.1(a)6(i) and 4.1(a)6(ii) define the formula as follows:

> i. Income subject to tax by the other jurisdiction means those items of income that are taxed by another jurisdiction before the allowance for personal exemptions and standard and/or other itemized deductions and which are also subject to tax under the New Jersey Gross Income Tax Act. "Subject to tax" is defined as income actually taxed.

> ii. Entire New Jersey income means the New Jersey gross income subject to tax before allowances for personal exemptions and deductions.

As noted above, the formula is expressed as follows:

$$\frac{\text{Income subject to tax by other jurisdiction (Adjusted Gross Income)}}{\text{Entire New Jersey income}} \text{ before allowance for exemptions and deductions} \times \text{New Jersey Tax} = \text{Credit}$$

Further, N.J.A.C. 18:35-4.1(a)10 prohibits including in the numerator in the fraction "any income that has been excluded or deducted from taxable gross income of another jurisdiction."

---

[2] For ease of reference, the earlier matter brought by plaintiffs will be denoted Tuohy I, and the instant matter referred to as Tuohy II.

9

Plaintiffs contend, as they did in Tuohy I, that the resident tax credit should equate to the percentage of Mr. Tuohy's salary attributable to New York State, which in turn is based on the number of days an individual works in that jurisdiction during the tax year. Mr. Tuohy states that for tax year 2014, 85% of his wage income, or $92,070, was taxed by New York State based on 200 days he worked in the jurisdiction. Thus, plaintiffs urge they should receive an 85% credit against their New Jersey gross income tax.

They achieve this result by expressing the fraction in the credit formula as follows:

$$\frac{\$92,070 \text{ (wages attributed to NY State)}}{\$107,125 \text{ (plaintiffs' reported NJ gross income)}^3} = 85.946\%$$

In Tuohy I, plaintiffs utilized the same methodology and arrived at a credit of 83.33% against their New Jersey gross income.[4] In their NJ GIT returns for tax years 2004 and 2014, plaintiffs included in the numerator Mr. Tuohy's alimony payments to his former wife.

In rejecting plaintiffs' calculation of the numerator, specifically the inclusion of alimony payments, the court in Tuohy I cited Ambrose v. Dir., Div. of Taxation, 198 N.J. Super. 546 (App. Div. 1985) as controlling precedent. In Ambrose, the court held the Director properly excluded the plaintiff's alimony payments from his New York taxable income as expressed in the numerator of the credit fraction, noting that the statute "clearly distinguishes between income actually taxable

---

[3] It is noted that in Tuohy I, plaintiffs correctly applied their "entire New Jersey income" to the denominator of the credit fraction. In Tuohy II, plaintiffs do not use their "entire New Jersey income" as required by N.J.S.A. 54A:4-1(b) and N.J.A.C. 18:35-4.1(a)6(ii), instead excluding dividends, capital gains, and wages used to fund Mr. Tuohy's I.R.C. § 403(b) retirement fund. Since this excludability issue was not adjudicated in Tuohy I, plaintiffs are not now collaterally estopped from contesting that portion of the Director's credit calculation that adds these items to the denominator, increasing it to $146,106.

[4] Although ten years separate the tax years in question, it bears noting that the reason the percentages reached by plaintiffs are nearly the same is due to the fact that the values in both the numerator and denominator changed only slightly.

10

in the foreign state and the taxpayer's 'entire New Jersey income.'" Id. at 552. In Tuohy II, plaintiffs have offered nothing to disturb the precedential nature of the Ambrose court's interpretation of how the numerator of the resident credit fraction should be calculated.

Next, plaintiffs urge that the denominator of the resident credit fraction, representing their entire New Jersey income, should not include income used to pay alimony to Mr. Tuohy's former wife. Plaintiffs posit that as they do not benefit from the $36,700 in wages earmarked for alimony, it does not constitute income. Further, they contend that because the alimony is income to Mr. Tuohy's former spouse under N.J.S.A. 54A:5-1, it cannot also be income to plaintiffs. Finally, plaintiffs urge that because alimony payments are deductible under N.J.S.A. 54A:3-2, they cannot be deemed gross income. These exact arguments were made in Tuohy I with regard to calculation of the resident tax credit and were rejected by the court. In addition, the methodology used by the Division's auditor in adjusting the resident tax credit comports with the adjustments applied to plaintiffs' credit calculation for tax year 2004. Further, plaintiffs have not demonstrated that the Director altered the mode of computation of the denominator in the instant matter as compared to the calculus used for the same task in Tuohy I.

Thus, the issue raised in the case at bar with regard to plaintiffs' tax credit has already been fully and fairly adjudicated. See Habick v. Liberty Mut. Fire Ins. Co., 320 N.J. Super. 244, 255 (App. Div. 1999) (holding that in applying collateral estoppel, the "key factor is the opportunity to be heard fully") (emphasis added). The party against whom collateral estoppel is sought "must have his or her 'day in court' on the specific issue in question." Pace, 347 N.J. Super. at 217. In the instant matter, the record clearly demonstrates that plaintiffs have had such a day. Moreover, plaintiffs' arguments are unsupported by statutory or common law, and cannot prevail on the merits.

In sum, the court concludes that collateral estoppel precludes relitigation of the issues enunciated above pertaining to plaintiffs' dispute with the Director's computation of the resident tax credit. Plaintiffs' challenge to the Director's addition of dividends, capital gains, and I.R.C. § 403(b) contributions to the denominator of the credit fraction, heretofore unlitigated, is addressed below.

II. The Director properly included dividends, net gains, and wages used to fund an I.R.C. § 403(b) retirement plan in calculating plaintiffs' gross income.

"The court's analysis of the parties' arguments is guided by the familiar principle that the Director's interpretation of tax statutes is entitled to a presumption of validity." Murphy v. Dir., Div. of Taxation, 26 N.J. Tax 432, 442 (Tax 2012), aff'd, 27 N.J. Tax 293 (App. Div. 2013). Similarly, "the Director's regulations are entitled to a presumption of reasonableness." Reck v. Dir., Div. of Taxation, 175 N.J. 54, 55 (2002). Thus, one who challenges a regulation must show it is "arbitrary, capricious or unreasonable." Ibid.

All residents of the State of New Jersey are subject to a tax on gross income. N.J.S.A. 54A:2-1. N.J.S.A. 54A:5-1 designates the categories of income included in New Jersey gross income. N.J.S.A. 54A:5-1(a) lists "[s]alaries, wages, tips, fees, commissions, bonuses, and other remuneration received for services rendered" as a category of taxable income. N.J.S.A. 54A:5-1(c) includes net gains or income from disposition of property. N.J.S.A. 54A:5-1(f) denotes dividends as a category of income.

In the matter before the court, plaintiffs claim the Division's auditor incorrectly added dividends, net gains from sale of stock, and wages withheld to fund an I.R.C. § 403(b) retirement plan to their New Jersey gross income.

With respect to dividend income, plaintiffs argue that the inclusion of dividends as taxable income under N.J.S.A. 54A:5-1(f) is unfair given that the dividends are already taxed at the

12

corporate level, and then taxed again by the federal government when distributed to the shareholder. Plaintiffs reported $13,880 in dividend income on their federal tax return, yet excluded the same income on their NJ GIT return. Plaintiffs offer that the NJ GIT return would be "simpler" without the inclusion of dividend income. Plaintiffs' argument is unsupported by legal authority.

As to net gains, plaintiffs contend they should be permitted to carryover stock losses from prior years to reduce their gains in the current tax year, as allowed under federal law. U.S.C.S. 26 § 1212(b). Specifically, plaintiffs seek to offset gains with losses incurred during twenty years of stock ownership. Accordingly, they excluded their 2014 capital gains of $13,528 on their 2014 New Jersey return, while including that income on their 2014 federal tax return before applying offsets. Plaintiffs offer no authority to support their claim regarding the ability to carryover losses and offset the same against gain income.

Plaintiffs' argument ignores statutory and common law. N.J.S.A. 54A:5-2 states: "Losses which occur within one category of gross income may be applied against other sources of gross income within the same category of gross income during the taxable year." (emphasis added). In Estate of Guzzardi v. Dir., Div. of Taxation, the court concluded that "[w]hile the statute does not specify precisely that the income and losses that are to be offset must arise during the same taxable year, the phrase 'during the taxable year' is superfluous unless it has that meaning." 15 N.J. Tax 395, 400 (Tax 1995), aff'd, 16 N.J. Tax 374 (App. Div. 1996). The court also observed that the NJ GIT Act "contains no provision analogous to I.R.C. § 1212(b)." Id. at 401. Further, it is an established tenet that "in the absence of a specific statutory provision it should not be assumed that federal principles should apply to the [NJ GIT] Act." Weintraub v. Dir., Div. of Taxation, 19 N.J.

13

Tax 65, 72-73 (Tax 2000) (citing Sutkowski v. Dir., Div. of Taxation, 312 N.J. Super. 465, 481-82 (App. Div. 1998)).

Plaintiffs next challenge the Director's inclusion of wages used to fund Mr. Tuohy's federal I.R.C. § 403(b) retirement plan. While plaintiffs do not dispute that the law provides only for the exclusion of I.R.C. § 401(k) contributions from gross income, they note that the New Jersey Legislature has, in the past, considered expanding the exception to include other public retirement plans, without success. Nevertheless, the law is clear. N.J.S.A. 54A:6-21 provides an exclusion from gross income for contributions "to a trust which is part of a qualified cash or deferred arrangement which meets the requirements of section 401(k) of the 1954 Internal Revenue Code." Judge Stern squarely addressed the issue in Reck, holding: "[W]e read the express authorization for the deductibility of section 401(k) contributions to preclude similar treatment of other types of pension and retirement plans, although not expressly prohibited." 345 N.J. Super. at 455. Moreover, "taxation is the rule and exemption is the exception to the rule." Id. at 449 (quoting AT & T Co. v. Dir., Div. of Taxation, 13 N.J. Tax 534, 543 (Tax 1993)).

Based on the foregoing, the court is satisfied that plaintiffs have failed to overcome the presumption of validity accorded to the Director's interpretation of the NJ GIT statutes at issue. It is concluded, then, that the Director's final determination affirming the calculation of plaintiffs' 2014 gross income is correct. Further, given the correctness of such determination, it follows that the Director's application of plaintiffs' gross income in the denominator of the credit fraction, representing "entire New Jersey income" is also proper.

Apart from the challenges to the Director's final determination, plaintiffs contend they have been denied due process by virtue of the fact that defendant waited approximately one year before scheduling a conference with the CAB. They assert that while taxpayers have only ninety days to

14

administratively appeal a decision of the Division or to file a complaint in the Tax Court under N.J.S.A. 54A:9-9 to -10, the Division has latitude in the scheduling of conferences. It is noteworthy that the 90-day period is a statutory filing requirement, and cannot be compared to the often lengthy proceedings associated with litigation.

"The essential components of due process are notice and an opportunity to be heard." Mettinger v. Globe Slicing Mach. Co., 153 N.J. 371, 389 (1998) (citations omitted). At each juncture in this action, plaintiffs have had notice, the opportunity to be heard, and have exercised such opportunity. Thus, the court is satisfied that plaintiffs have not been deprived of due process.

In conclusion, summary judgment is granted is favor of defendant. A judgment upholding the Director's final determination and dismissing the complaint with prejudice will be entered.